UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MADELINE GRULLON, as Parent and Natural Guardian of C.B., and MADELINE GRULLON, Individually *et al.*,<br><br>Plaintiffs,<br><br>-against-<br><br>DAVID C. BANKS, in his official capacity as Chancellor of the New York City Department of Education *et al.*,<br><br>Defendants. | Case No. 23-cv-10388 (KPF) |

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

**THE HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel for The City of New York
100 CHURCH STREET
NEW YORK, NEW YORK 10007
Jaimini Vyas
212-356-2079

**Attorneys for Defendants**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................1

        A.     Plaintiffs Cannot Show a Likelihood of Success on the Merits. ........................................................................................................2

        B.     Plaintiffs Cannot Show a Likelihood of Irreparable Harm. .........................7

        C.     The Public Interest is Not Served by the Issuance of a Preliminary Injunction ...............................................................................15

        D.     The Balance of Hardships do not Favor Plaintiffs ....................................16

CONCLUSION ................................................................................................................................17

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Pages**

*Araujo v. N.Y.C. Dep't of Educ.*,
   2023 U.S. Dist. LEXIS 139223 (S.D.N.Y. Aug. 9, 2023) ................................................. 8

*C.C. v. N.Y. City Dep't of Educ.*, 20-cv-1915 (GBD) (SLC),
   2021 U.S. Dist. LEXIS 189344 (S.D.N.Y. Sept. 30, 2021)
   *adopted* 2022 U.S. Dist. LEXIS 31063 (S.D.N.Y. Feb 22, 2022)
   *aff'd* by summary order 2023 U.S. App. LEXIS 6361 (2d Cir. 2023) ........................... 3, 7

*De Paulino v. N.Y. City Dep't of Educ.*,
   959 F.3d 519 (2d Cir. 2020) ....................................................................................... 17

*J.G. v. Mills*,
   2006 U.S. Dist. LEXIS 101621 (E.D.N.Y. July 6, 2006) ................................................. 8

*Loveridge v. Pendleton Woolen Mills, Inc.*,
   788 F.2d 914 (2d Cir. 1986) ........................................................................................ 18

*M.W. v. N.Y.C. Dep't of Educ., 15-cv-5029*,
   2015 U.S. Dist. LEXIS 112832 (S.D.N.Y. Aug. 25, 2015) ............................................... 3

*Mendez v. Banks*,
   65 F.4th 56 (2d Cir. 2023) ................................................................ 2, 6, 9, 10, 11, 16, 17

*Neske v. N.Y.C. Dep't of Educ.*,
   No. 22-2962-cv, 2023 U.S. App. LEXIS 34126 (2d Cir. Dec. 26, 2023) ....................... 15

*Tucker Anthony Realty Corp. v. Schlesinger*,
   888 F.2d 969 (2d Cir. 1989) .......................................................................................... 9

*Uppal v. N.Y. State Dep't of Health*,
   756 F. App'x 95 (2d Cir. 2019) ...................................................................................... 9

**PRELIMINARY STATEMENT**

Defendants Chancellor David C. Banks and the New York City Department of Education ("DOE") (collectively "Defendants") respectfully submit this Memorandum of Law in opposition to Plaintiffs' Motion for a Preliminary Injunction.

In bringing the instant motion, Plaintiffs have burdened this Court with requests for relief that are moot or not ripe due to Plaintiffs' own inaction. While Plaintiffs make broad statements such as "DOE has failed and/or refused to fund each Plaintiff's uncontested pendency placement at iBRAIN for the 2023–2024 SY", Plaintiffs' memorandum of law contradicts this statement and indicates that some payments have been made. *See* Pl.'s Mem. Law, Table at p. 11, Dkt. 10. The reality is that from July 1, 2023 through December 29, 2023, the DOE has paid more than $6,648,338.19 toward tuition at iBRAIN, including $1,031,334.08 in payments for the Plaintiffs in this action. *See* Kapoor Decl., ¶¶ 8, 11, 13, 18, attached hereto as "Exhibit A."

Plaintiffs' request fails to meet the standards for preliminary injunctive relief and succeeds only in highlighting Plaintiffs' impermissible goal of frustrating DOE's payment processes to prioritize the Student-Plaintiffs over the "thousands of funding requests under the IDEA" the DOE receives at the start of the school year. *See Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023). Plaintiffs' application for a Preliminary Injunction must therefore be denied.

**ARGUMENT**

"To obtain a preliminary injunction, plaintiffs must show (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiffs' favor, (2) that they are likely to suffer irreparable injury in the absence of an injunction, (3) that the balance of hardships tips in their favor, and (4) that the public interest would not be disserved by the issuance of a preliminary injunction." Id. at 63–64 (internal quotation marks and alterations omitted).

Further, where, as here, Plaintiffs seek a mandatory injunction or substantially all the relief sought in the complaint, they "must show a 'clear' or 'substantial' likelihood of success on the merits and make a 'strong showing' of irreparable harm, in addition to showing that the preliminary injunction is in the public interest." *M.W. v. N.Y.C. Dep't of Educ.*, 15-cv-5029, 2015 U.S. Dist. LEXIS 112832, at *7 (S.D.N.Y. Aug. 25, 2015) (quoting *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999) and *DOE v. N.Y. Univ.*, 666 F.2d 761, 773 (2d Cir. 1981)).

Additionally, as is the case here, if "the injunction would modify the status quo, then the moving party must meet a heightened legal standard by showing a clear or substantial likelihood of success on the merits." *C.C. v. N.Y. City Dep't of Educ.*, 20-cv-1915 (GBD) (SLC), 2021 U.S. Dist. LEXIS 189344 (S.D.N.Y. Sept. 30, 2021) (quoting *N. Am. Soccer League, L.L.C. v. United States Soccer Fed'n, Inc.,* 883 F.3d 32 (2d Cir. 2018) (internal quotation marks omitted)) *adopted* 2022 U.S. Dist. LEXIS 31063 (S.D.N.Y. Feb 22, 2022) *aff'd* by summary order 2023 U.S. App. LEXIS 6361 (2d Cir. 2023).

In requesting that this Court issue an order to "directly fund the Student-Plaintiffs' pendency placements/programs at their current educational placement, including tuition and related services, special transportation, and nursing services where applicable," Pl.'s Mem. Law 7, ECF 10, Plaintiffs have requested relief that has been provided to them without this Court's intervention or to which they are not yet entitled. Plaintiffs' request must therefore be denied.

### A. **Plaintiffs Cannot Show a Likelihood of Success on the Merits.**

Plaintiffs cannot show a likelihood of success on the merits. Plaintiffs' Complaint is based on the claim that the DOE has failed to implement the various pendency and final orders that Plaintiffs received through the administrative process. Compl. ¶¶ 18–20, ECF 1. However, Defendants have complied and will continue to comply with the orders Plaintiffs claim to be

seeking to enforce, as demonstrated by the following status summary of the funding of pendency for each Student in this action:

For C.B., complying with the final decision in Case No. 250752 (which Brain Injury Rights Group initially appealed before abandoning the appeal on November 29, 2023), DOE's Impartial Hearing Order Implementation Unit ("IHOIU") has processed payment for tuition in the total amount of $280,384.00 to cover the period from July 5, 2023, to June 21, 2024, i.e., the entire 2023-2024 school year. The $280,384.00 was issued to iBRAIN via EFT on December 26, 2023, through check number 65940434. There are currently no outstanding amounts owed for C.B.'s tuition. *See* Kapoor Decl. ¶ 11.

Complying with the final decision, on December 29, 2023, IHOIU also processed a $192,930 payment to cover C.B.'s transportation for the period from July 5, 2023, to June 21, 2024, i.e., the entire 2023-2024 school year. The transportation provider, an allegedly separate entity from iBRAIN, should receive this payment soon and will see this payment in the payment information portal ("PIP"). There are currently no outstanding amounts owed for C.B.'s transportation. *See* Kapoor Decl. ¶ 12.

For L.S., complying with the corrected final decision in Case No. 251061, IHOIU has processed payment for L.S.'s tuition in the total amount of $296,080.00 to cover the entire extended school year period from July 5, 2023, to June 21, 2024. This $296,080.00 was issued to iBRAIN via two EFTs, one on November 30, 2023 and another on December 21, 2023, through check numbers 05908695 and 05935650. There are currently no outstanding amounts owed toward L.S.'s tuition. *See* Kapoor Decl. ¶ 13.

Complying with the corrected final decision in Case No. 251061, IHOIU also processed a $292,556.00 payment to cover nursing for the entire extended school year period from July 5,

2023, to June 21, 2024. This $292,556.00 was issued to the nursing services provider via EFT on December 21, 2023, through check number 15936989. There are currently no outstanding amounts owed toward L.S.'s nursing. *See* Kapoor Decl. ¶ 14.

Payment for L.S.'s transportation services under the corrected final decision in 251061 is subject to receiving actual documentation that the student attended iBRAIN in person and/or that the student was transported to and from school. Although IHOIU requested from Brain Injury Rights Group ("BIRG") on December 18, 2023 the necessary documentation to support transportation payments, BIRG has not provided that documentation. *See* Kapoor Decl. ¶ 15.

For S.J.D., complying with the final decision in Case No. 251257, IHOIU processed payment for tuition on December 28, 2023, in the total amount of $306,544.00 to cover the entire extended school year period from July 5, 2023, to June 21, 2024. iBRAIN should receive this payment soon and will see this payment in the PIP. There are currently no outstanding amounts owed toward S.J.D's tuition. *See* Kapoor Decl. ¶ 8.

Defendants note that, through this emergency motion, Plaintiffs used the urgency created by the Court's scrutiny upon the DOE to improperly extract on a priority basis an unripe payment for S.J.D., child of iBRAIN founder Patrick Donohue. It is concerning that Plaintiffs failed to provide to the Court a copy of the most recent FOFD issued on November 17, 2023, in case 251257 for S.J.D., which ordered that "the DOE shall pay to Private School the remainder of any tuition funds, totaling $306,544.00 dollars within 60 days of submission of a signed, notarized bill encompassing tuition costs owed by Parent to Private School for Student's attendance at Private School for the 2023-2024 school year." A copy of this FOFD, which Plaintiffs reference in their Complaint with an incorrect "November 18, 2023" date, (Compl., ECF 1, ¶¶ 129, 131), is attached hereto as "Exhibit B." Under the terms of this FOFD, even if Plaintiffs had provided

4

an appropriate signed and notarized bill on November 17, the very day the FOFD was issued, the DOE would have had until January 16, 2024 to authenticate and process the bill.

It is concerning that Plaintiffs instead elected to rely upon and provide to the Court an earlier September 21, 2023, Pendency Order, attached as Exhibit 5 to the Complaint, (ECF 1-5), and represented to the Court that tuition payments for S.J.D. had become due and were pending since July 5, 2023. *See* Compl. ¶¶ 120–27. See also representations by Plaintiffs' Counsel during the December 15th telephonic conference in this matter, a transcript of which is attached hereto as "Exhibit C," at 19:5–7, 22:6–16. Presumably, Plaintiffs anticipated that the Court's concern regarding delayed payments (*see* Ex. C, 23:3–12) would prompt DOE to fast-track payments. But Plaintiffs' demand for S.J.D.'s tuition payments was unripe, and Plaintiffs now have improperly circumvented DOE's ordinary payment procedure by forcing it to disburse funds on priority while neutralizing its ability to diligently "implement basic budgetary oversight measures." *Mendez*, 65 F.4th at 63.

Complying with the corrected final decision in 251257, IHOIU has processed payment for S.J.D.'s nursing in the total amount of $265,960.00 to cover the entire extended school year period from July 5, 2023, to June 21, 2024. IHOIU processed this $265,960.00 payment on December 28, 2023, and the nursing services provider, an allegedly separate entity from iBRAIN, should soon be able to view this payment in the PIP. There are currently no outstanding amounts owed toward L.S.'s nursing. *See* Kapoor Decl. ¶ 9.

Payment for S.J.D.'s transportation services under the corrected final decision in 251257 is subject to IHOIU receiving actual documentation that the student attended iBRAIN in person and/or that the student was transported to and from school. Although IHOIU requested from Brain Injury Rights Group ("BIRG") on December 18, 2023 the necessary documentation to support

5

transportation payments, BIRG has not provided that documentation. *See* Kapoor Decl. ¶ 10.

For R.P., both Plaintiffs and Defendants agree that there are no outstanding amounts owed for tuition. Complying with the pendency order in Case No. 250927, IHOIU processed a $148,326.08 payment for R.P.'s tuition to cover the period from July 7, 2023 through December 31, 2023. This $148,326.08 payment was issued to iBRAIN via two EFTs: one on August 14, 2023, and another on September 5, 2023, through check numbers 45757804 and 55787617. There are currently no outstanding amounts owed toward R.P.'s pendency tuition. See Kapoor Decl. ¶ 16.

Complying with the final decision, on December 28, 2023, IHOIU also processed a $96,465.00 payment to cover R.P.'s transportation for the period from July 6, 2023 to December 31, 2024, i.e., the entire 2023-2024 school year. The transportation provider should soon be able to view this payment in the PIP. There are currently no outstanding amounts owed toward R.P.'s transportation. *See* Kapoor Decl. ¶ 17.

Regardless of what standard is applied, Plaintiffs cannot show a likelihood of success on the merits under any theory. *See* C.C., 2021 U.S. Dist. LEXIS 189344, at *23 ("Because the DOE has not failed to implement the IHO Order, Plaintiff cannot establish a likelihood of success on the merits, and is not entitled to a preliminary injunction."). Payments have been made, further payments are being processed, and in some instances, further documentation is necessary. Thus, DOE has complied and will continue to comply with the underlying administrative orders, except where it is impossible to do so based on Plaintiffs' refusal to provide necessary documents.

Courts have repeatedly found that Plaintiffs seeking payment under IHO orders must provide the necessary documents to allow DOE to comply with those orders. *See Davis v. Banks* 2023 U.S. Dist. 160092 (S.D.N.Y. Sept. 11, 2023) (finding in similar circumstances that

"Plaintiffs are entitled to reimbursement only for days that their children actually used transportation services and that the DOE is obligated to pay only if they provide 'adequate documentation.'"); *Araujo v. N.Y.C. Dep't of Educ.,* 2023 U.S. Dist. LEXIS 139223 (S.D.N.Y. Aug. 9, 2023) ("Because Defendant correctly interprets the FOFD, and because Plaintiffs concede that they have not submitted evidence of the days [Plaintiffs] actually used transportation services, Defendant does not currently have an outstanding obligation to pay for those services.").

Insofar as Plaintiffs' request for a Preliminary Injunction seeks to require Defendants to remit payment without receipt and review of the proper documentation required by the pendency order and Defendants' internal policies, such a request must meet the heightened standard of a mandatory injunction. *See J.G. v. Mills,* 2006 U.S. Dist. LEXIS 101621 (E.D.N.Y. July 6, 2006) ("Because most, if not all, of the relief that plaintiffs seek would, if granted, alter the status quo before a decision on the merits by requiring affirmative actions by the defendants, I conclude that plaintiffs are seeking a mandatory injunction and therefore must meet the heightened standard of demonstrating a "clear" or "substantial" likelihood of success.") Plaintiffs have failed to meet that standard here. Moreover, Tuition for all Students has been paid pursuant to the relevant pendency or final orders and thus Plaintiffs cannot succeed on the merits.

### B. Plaintiffs Cannot Show a Likelihood of Irreparable Harm.

Plaintiffs have failed to show an actual and imminent—rather than merely speculative—harm. As Plaintiffs' counsel indicated to the Court at the telephonic conference held in this matter on December 15, 2023, iBRAIN has not provided to any of the Student-Plaintiffs here a specific determination or decision that they will be disenrolled from the school due to a failure to pay tuition or any date of imminent disenrollment. See Ex. C, 6:2–14. Plaintiffs have made no showing that any schooling or services are at risk during the 2023/2024 school year, which is fatal to their

application. *See Uppal v. N.Y. State Dep't of Health*, 756 F. App'x 95, 96 (2d Cir. 2019) ("Irreparable harm is the single most important prerequisite for injunctive relief, and in the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied.") An irreparable harm must be an injury "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).

Plaintiffs cannot show a likelihood of irreparable harm because the Students' educational program is not actually at risk due to the DOE's actions. Nevertheless, Plaintiffs argue that "each Student-Plaintiff here is entitled to an automatic/preliminary injunction requiring DOE to fast-track funding for their pendency placements/programs—to accelerate payment and/or reimbursement—without regard to the traditional preliminary injunction factors" (Pl.'s Mem. Law 29, ECF 10) because "[i]f pendency payments are not made within days, the school will close, and the Students will be left without a program." Pl.'s Mem. Law 24, ECF 10. The Plaintiffs claim that the DOE's ordinary payment procedure will cause iBRAIN's closing: "DOE's untimely payment practices will force the Students' existing placement to close and discontinue providing services to them." *Id.* at 25. Irrespective, any alleged financial issues at iBRAIN—a nonparty to this action and to the administrative proceedings below—are not relevant to irreparable harm to the actual Plaintiffs.

Despite the Second Circuit explicitly holding that "Plaintiffs are wrong as a matter of law," Mendez, 65 F.4th at 63, Plaintiffs here reiterate the argument that has been rejected by the Circuit that they are not required to establish a likelihood of irreparable harm. Instead, in this action, and in fourteen other cases filed in the Southern and Eastern Districts, parents with students at iBRAIN seek to circumvent both this heightened "irreparable harm" standard and DOE's timeframe of disbursing payments according to its ordinary payment procedures by bringing this and similar

8

emergency motions for Temporary Restraining Orders and Preliminary Injunctions to obtain expedited payments. This, and similar motions, have adopted a pattern and practice of attempting to "frustrate [DOE's] fiscal policies," Mendez, 65 F.4th at 63, through a two-pronged approach to claim "entitlement to immediate payment or reimbursement." *Id.*

First, the Plaintiffs argue that the DOE's ordinary payment procedure for disbursing reimbursements for pendency is a "refusal to implement and fund each Student's respective pendency placement/program" (Pl.'s Mem. Law 9, ECF 10) and thus is a "policy contrary to the law." Pl.'s Mem. Law 17–18, ECF 10. This ignores the Second Circuit's "determination that the [IDEA] does not require circumvention of ordinary payment procedures[,] [which] comports with the practical realities of bureaucratic administration." *Mendez*, 65 F.4th at 63.

Second, the Plaintiffs allege that DOE's ordinary payment procedure for disbursing reimbursements has supposedly thrown iBRAIN into dire financial straits and placed the Students at immediate risk of losing their placement there. Pl.'s Mem. Law 21, ECF 10. The following representation by Plaintiffs' counsel to the Court at the telephonic conference held in this matter on December 19, 2023 (a copy of the transcript of the December 19th telephonic conference is attached hereto as "Exhibit D"), indicates that this is a transparent attempt to shoehorn their preferred timeline of reimbursements within the narrow exception in *Mendez* by manufacturing a showing that DOE's ordinary timeline of reimbursements is "a delay or failure to pay [that] has threatened their child's placement." *Mendez*, 65 F.4th at 59. Pl.'s Mem. Law 21, ECF 10:

> As far as the TRO, I'm approaching it from a little bit different standard. In *Mendez*, the Second Circuit talked about the 1415(j) automatic injunction, and although they said it's not automatic when it comes to payments for private school placement, the parents may be able to request that automatic injunction, that injunction under 1415(j) when placement is in jeopardy because of a delay or nonpayment.

9

Ex. D, 16:6–12.

As discussed below, they have failed to "establish that a delay or failure to pay has jeopardized their child's educational placement. … [Thus] the DOE is not obliged to circumvent its ordinary payment procedures." *Mendez*, 65 F.4th at 63.

Moreover, by filing and litigating these emergency motions—even when they are ultimately denied by the Courts—Plaintiffs at iBRAIN inappropriately "cut the queue" and force DOE to fast-track reimbursements on Plaintiffs' preferred, expedited timeline before thousands of other equally deserving disabled students who depend on payments awarded under pendency or final orders. Just in the last six months, BIRG has filed motions for emergency relief in the following fifteen cases in attempts to force DOE to make fast-tracked payments:

<u>United States District Court for the Southern District of New York</u>

1. *Navarro-Carillo et al. v. Banks et al.*, 23-cv-04773-JHR-JW

2. *Frias et al. v. Banks et al.*, 23-cv-05803-JGLC

3. *Lee et al. v Banks et al.*, 23-cv-05800-JLR

4. *Lummayos et al. v. Banks et al.*, 23-cv-10182-ER

5. *Lummayos et al. v. Banks et al.*, 23-Cv-05802-JPC

6. *Mejia et al. v. Banks et al.*, 23-cv-06401-DEH

7. *Khanimova et al. v. Banks et al.*, 23-cv-04775-LJL

8. *Landsman et al. v. Banks et al.*, 23-cv-06404-VEC

9. *Fiallos et al. v. Banks et al.*, 23-cv-09824-VEC

10. *Grullon et al. v. Banks et al.*, 23-cv-05797-JGLC

11. *Grullon et al. v. Banks et al.*, 23-cv-10388-KPF

12. *Ogunleye et al v. Banks et al,* 23-cv-9092-VSB

United States District Court for the Eastern District of New York

1. *Crosley et al. v. Banks et al.*, 23-cv-08560-PKC-TAM

2. *Zimmerman et al. v. Banks et al.*, 23-cv-05192-LDH-PK

3. *Ravitz et al. v. Banks et al.*, 23-cv-05183-PKC-VMS

To convince the Court that iBRAIN is in dire financial straits, Plaintiffs have submitted a declaration from Mr. Arthur Mielnik about iBRAIN's unstable finances.[1] Mielnik Decl., Ex. 1 to Pl.'s Mem. Law, ECF 10-1. Mr. Mielnik alleges that Defendants owe pendency funding for several iBRAIN students, most of whom are not parties in this action. Mielnik Decl. at ¶¶ 4–12, ECF 101. Mr. Mielnik also claims that iBRAIN is on the verge of financial ruin. Mielnik Decl., ¶¶ 19, 23–26, ECF 10-1. Mr. Mielnik's unreliable and generalized declaration does not provide any documentation in support of either claim.

The Mielnik Declaration relies heavily on an unfiled letter authored and sent to Defendants by Chris Whalen, CPA, which makes similar claims. Mielnik Decl. ¶¶ 5–9, ECF 10-1. Neither documents provide documentation supporting the claims therein. The Mielnik Declaration does not inform the Court exactly how each student in this action will immediately lose their placement because their reimbursements have not been provided according to iBRAIN's preferred timeline. Nor have Plaintiffs obtained from Messrs. Mielnik and Whalen to provide this Court any accounting records in support of their general claims of iBRAIN's imminent financial doom.

---

[1] Plaintiffs rely upon the Mielnik Declaration's assertions of iBrain's generalized financial insecurity, noting, without further explanation that iBRAIN has incurred operating expenses of six million dollars since July 2023. See Pl.'s Mem. Law 19, ECF 10. Yet, Mr. Mielnik's declaration neither asserts anything specific regarding Plaintiffs' immediate risk of losing their pendency placement, nor explains how payment for these specific Student-Plaintiffs will ameliorate their financial insecurity. Moreover, it does not explain the impact of DOE's payment of $6,648,338.19 during that same time period. *See* Kapoor Decl., ¶ 18.

The Mielnik Decl., ECF 10-1, filed in this matter is identical, in relevant part, to the Mielnik Declaration filed on November 21, 2023, in *Crosley, et al. v. Banks, et al.*, 23-cv-8560-PKC-TAM, ECF 10-1 (attached hereto as "Exhibit E"), except for some notable differences discussed below. A comparison of the two declarations raises additional concerns regarding the Plaintiffs' claims in this matter.

First, on November 21, Mr. Mielnik claimed that "from July 5, 2023, through the present, DOE failed to fund over $4.3 million in pendency funding," Ex. E, ¶ 12, while 22 days later, in his declaration filed in this matter, he claims that "from July 5, 2023, through the present, DOE failed to fund over $1.2 million in pendency funding." Mielnik Decl., ¶ 11, ECF 10-1. Assuming, *arguendo*, that these figures are accurate, iBRAIN claims to have received from DOE $3.1 million sometime in the last 22 days to fund their operations. This contradicts Plaintiffs' claims that "DOE's delay and failure to fully fund each Student-Plaintiff's educational placement/program and/or related services here, as well as over 30 other students at iBRAIN … has placed the Student-Plaintiffs' (and all students there) pendency placements/programs in jeopardy—they are at risk of closing, suspending services, scaling back operations, furloughing employees, and more." Pl.'s Mem. Law 29, ECF 10.

Second, Mielnik Decl., ¶ 23, ECF 10-1, is identical to Ex. E, ¶ 20, except that Mr. Mielnik added to ¶ 23 the following language in bold lettering: "and [iBRAIN] currently does not have the available funds to cover its upcoming December 15, 2023, payroll obligations" even though he asserts that, in the intervening 22 days since filing Ex. E, iBRAIN received approximately $3.1 million from the DOE.

Third, regarding the claims in Ex. E, ¶ 17, on November 2, 2023, as part of a meet and confer in *Ogunleye v. Banks*, 23-cv-9092 (VSB) (S.D.N.Y), Assistant Corporation Counsel Alfred

12

Miller requested from Mr. Mielnik evidence supporting his claims in Ex. E. On November 9, 2023, Assistant Corporation Counsel Thomas Lindeman responded directly to Mr. Whalen, highlighting the various accounting errors contained in the Whalen Letter and seeking documentation of the claims made therein. Neither Mr. Mielnik nor Mr. Whalen have responded to these requests.

Fourth, despite claiming that DOE recently provided approximately $3.1 million, Mr. Mielnik added, in bold lettering, iBRAIN's need for immediate further tuition payments in this case. Mielnik Decl., ¶ 26, ECF 10-1. This emphasis on immediate payment is lacking in Ex. E, ¶ 24, which is otherwise similar, in relevant part. This indicates that Plaintiffs' emergency motion is a transparent attempt to obtain as much money as possible as quickly as possible. Separately, a comparison of the two paragraphs demonstrates that iBRAIN concedes that the Plaintiffs are not at risk of losing their placements. In his filing before this Court, Mr. Mielnik changed his earlier claim that the "program will close," Ex. E, ¶ 24, to state "program may close," Mielnik Decl., ¶ 26, ECF 10-1. Similarly, he changed his earlier claim that "students with disabilities, will be displaced from their current educational programs," Ex. E, ¶ 24, to "students with disabilities, may be displaced from their current educational programs." (Emphasis added.) This further undermines Plaintiffs' claims of imminent and irreparable harm.

Plaintiffs' motion for emergency relief is couched in terms that seek to highlight the precarious financial condition of iBRAIN, as opposed to the financial situation of the Plaintiff parents. And, just three days ago, the Second Circuit noted that Brain Injury Rights Group ("BIRG") is the "iBrain-related law firm":

> Dorothy Neske initially testified that she had not conferred with a lawyer and had not discussed her ability to pay tuition with the iBrain administration; then she testified, however, that she had indeed discussed the contract with the law firm that provided it to her. But when asked to identify that law firm,

13

> she backtracked, in what could fairly be read as an effort to conceal the role played by the **iBrain-related law firm** in slowing down the IEP process.

*Neske v. N.Y.C. Dep't of Educ.*, No. 22-2962-cv, 2023 U.S. App. LEXIS 34126, at *6 (2d Cir. Dec. 26, 2023) (summary order) (emphasis added).

> The record provides sufficient support for the district court's determination, based on the agency's findings, that the Neskes not only did not cooperate with the DOE but also were likely part of a broader campaign to disrupt the IEP creation process to support the migration of students from iHope to iBrain, which was orchestrated by the **founder of iBrain and his related law firm**.

*Id.* at *4-5 (emphasis added).

In any event, iBRAIN's supposed "dire financial situation" should not cause Plaintiffs to be treated with greater priority as they have not satisfied the preliminary injunction standard.

Additionally, the Plaintiffs assert—without providing the Court with supporting evidence—that "some [Plaintiffs] have received distressing letters from their transportation provider, stating that services will cease unless outstanding unpaid balances are addressed." Pl.'s Mem. Law 19, ECF 10. However, no such letters have been attached to the Complaint, ECF 1. Indeed, addressing the Plaintiffs' supposed risk of imminently losing transport services at the December 19 telephonic conference held in this matter, Plaintiffs' counsel stated, "[i]f those letters are not in this complaint, then the urgency has not been set out." Ex. D, 17:16–17. Further, Plaintiffs' counsel agreed with the Court that they had not presented a record sufficient for the Court to issue a TRO based on a failure to pay transportation costs. *Id.* at 27:2–10, 27:23–28:1. The same record is required to establish imminent harm, and thus, Plaintiffs' request for a preliminary injunction to fast-track payments for transport services must be denied.

Separately, Plaintiffs rely on two form letters attached as Exhibits 7 and 8 to the Complaint, ECF 1-7 and 1-8, to allege that two students—L.S. and S.J.D.—risk imminently losing their nursing services due to overdue payments. Although both letters state the correct IHO case numbers, they are unreliable because each names a student not party to this litigation, and the addressee's name in one letter does not name the correct parent. These letters are insufficient to "show that a delay or failure to pay has threatened their child's placement." *Mendez*, 65 F.4th at 59. In sum, there is no credible support in the application that any Plaintiff-students here are at imminent risk of actually losing nursing services, particularly where, as here, payments have been made. *See generally* Kapoor Decl. Therefore, the Plaintiffs have failed to meet their burden to show that any Student-Plaintiff's program is at risk.

Overall, since July 1, 2023, the DOE has paid more than $6,648,338.19 in tuition to iBRAIN—including $1,031,334.08 toward tuition for the Plaintiffs here—and continues to review documents provided by iBRAIN and Plaintiffs and process their payments as appropriate. Additionally, payment for some transportation services requires documentation which have been requested by the DOE but not provided to it by iBRAIN. *See* Kapoor Decl. ¶¶ 10, 15.

Again, without a showing "that a delay or failure to pay has jeopardized [a] child's educational placement… the DOE is not obliged to circumvent its ordinary payment procedures." *Mendez,* 65 F.4th at 63. Plaintiffs have failed to show that these Plaintiff-students immediately risk the irreparable harm of losing their placement at iBRAIN because of DOE's delay or failure to pay. Thus, Plaintiffs are not entitled to injunctive relief, and their request must be denied.

### C. The Public Interest is Not Served by the Issuance of a Preliminary Injunction

The Plaintiffs' stated goal in the many near-identical enforcement actions brought in this District and the Eastern District of New York—including the fifteen motions for emergency relief

filed in the last six months—is to receive orders requiring the DOE to fund immediately the Students' pendency placements at iBRAIN. As the Second Circuit found in *Mendez*, such an order would be inappropriate:

> Our determination that the statute does not require circumvention of ordinary payment procedures here comports with the practical realities of bureaucratic administration... Any agency will need some amount of time to process and pay submitted invoices. If each pendency order entitled parents or guardians to immediate payment, school districts would be unable to implement basic budgetary oversight measures, such as requiring receipts before reimbursement.

65 F4th at 63; *see also De Paulino v. N.Y. City Dep't of Educ.*, 959 F.3d 519 (2d Cir. 2020). ("Nothing in the statutory text or the legislative history of the IDEA … implies a legislative intent to permit [parents or guardians] to utilize the stay-put provision's automatic injunctive procedure to frustrate the fiscal policies of participating states.")

The DOE's procedures are designed to ensure that taxpayer funds are properly spent and cared for, and that the students receiving those funds are also receiving adequate services. Plaintiffs here attempt to frustrate those policies in service of immediate payment to iBRAIN. Such an outcome would be inappropriate even if Plaintiffs' placements were at risk, which they are not.

Simply put, Plaintiffs' claims for tuition payments are moot. Moreover, Plaintiffs make no showing how these payments even if owed, would ameliorate iBRAIN's purported financial insecurity. Thus, there is little cause to abandon the public's interest in responsible spending.

### D. The Balance of Hardships do not Favor Plaintiffs

As Plaintiffs have failed to show that their educational placements are at risk, the only remaining issue is the timing of the monetary payments to which Plaintiffs are entitled. As discussed above, DOE has processed and approved tuition payments for the entire extended 2023–24 school year for C.B., L.S., and S.J.D., and for the first half of the school year for R.P. DOE has

16

also processed and approved nursing payments for L.S. and S.J.D. for the entire extended 2023–24 school year. DOE has processed and approved C.B.'s transportation payment for the entire extended 2023–24 school year and the first half of the year for R.P. As for L.S., and S.J.D., BIRG has not responded to IHOIU's request for actual documentation showing that the student attended iBRAIN in person and/or that the student was transported to and from school. Even were those payments due now, which they are not, waiting for that process to complete will not create the type of injury cognizable for emergency injunctive relief, as the entitlement Plaintiffs seek to enforce is only for reimbursement. *See Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 918 (2d Cir. 1986) ("[W]here money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law.")

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction and grant Defendants such other and further relief as the Court deems just and proper.

Dated:   December 30, 2023
         New York, New York,

> HON. SYLVIA O. HINDS-RADIX
> *Corporation Counsel of the City of New York*
> Attorney for Defendants
> 100 Church Street
> New York, NY 10007
> 212-356-2079
>
> By: _____
>      Jaimini A. Vyas
>      *Assistant Corporation Counsel*

17