# Exhibit B

# FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 251257 |
| Student's Name: | ▮▮▮▮▮▮▮▮ ("Student") |
| Impartial Hearing Officer: | Michael Das |
| Date of Filing: | 7/6/2023 |
| Hearing Requested by: | Patrick Donohue ("Parent") |
| Date of Hearing: | 10/5/2023, 10/10/2023, 10/12/2023 |
| Record Close Date: | 11/17/2023 |
| Date of Decision: | 11/17/2023 |

# BACKGROUND

The Parent, through Parent Attorney, filed a Due Process Complaint ("DPC") on or about July 6, 2023. (P-A)[1]. In the DPC, Parent alleges that the Department of Education ("DOE" or "District") failed to offer Student with a free appropriate public education ("FAPE") for the 2023-2024 school year. *Id*. By way of relief, Parent seeks an award of direct tuition funding for Student's attendance during the 2023-2024 school year at Private School, a private program not approved by the Commissioner of Education for the education of students with disabilities, along with direct funding for transportation and nursing services. *Id*. Furthermore, Parent alleges that the equities support their claim for tuition reimbursement for the 2023-2024 school year. *Id*.

In light of the foregoing and as more fully discussed below, I find that: (i) the DOE failed to meet its burden that it offered Student a FAPE for the 2023-2024 school year, (ii) Private School offers Student with specially designed instruction sufficient to meet Student's needs, and (iii) the equities support Parent's requested relief and student is entitled to both transportation and nursing costs.

# PROCEDURAL HISTORY

I was appointed as the Impartial Hearing Officer on July 13, 2023.[2] On August 15, 2023, the parties appeared for a virtual Pre-Hearing Conference. On that date, parties discussed the pendency form as there was a disagreement on what pendency was based on.[3] Parent's counsel submitted a proposed pendency form via email prior to the Pre-Hearing Conference. The parties were told to discuss pendency off the record and determine whether they could come to an agreement. On September 6th, 2023, one of the attorneys representing parent sent an email indicating DOE would not agree to pendency so a pendency hearing was necessary.[4] Parties were advised to submit their pendency motions and exhibits by email. A status conference was held on September 15, 2023. Parent wished for a hearing at that time but that request was denied. The assigned IHO initially set a short hearing date as Parent did not consent to an extension of the compliance date. The DOE objected to the short time period.[5] After the hearing, the assigned IHO sent an email allowing the DOE to make a formal request for an extension of the

---

[1] Exhibits will be cited throughout as Parent ("P"), District ("DOE"), or IHO ("I") – Exhibit Letter (for Parent), Exhibit Number (for District), Exhibit Numeral (for IHO) – page number of exhibit. So, P-A-3 is Parent's Exhibit A, page 3.
[2] All references to the Transcript will be made with the date of the conference discussed and the Transcript page number and line. Thus, 8/15/23, Tr. 10, 9-12 is referencing August 15, 2023, on Transcript page 10, lines 9 through 12.
[3] 8/15/23, Transcript.
[4] IHO-I.
[5] 9/15/23 Transcript.

compliance date via email. The DOE requested an extension of compliance, and it was granted over the parent's counsel objections via email.[6]

On October 5, 2023, both parties appeared for a virtual Due Process Hearing. DOE sought to introduce 17 exhibits into the record.[7] Parent objected to exhibits 10, 14, and 15 where exhibit 15 was not allowed into the record.[8] Parent then moved to enter exhibits A-L into the record where certain paragraphs of exhibit L was allowed into the record over DOE's objection and Exhibits B and I were allowed in for the purposes of understanding pendency only.[9] Both parties opened on the record and submitted written closings. The parties returned for a second hearing date on October 10, 2023 to complete witness testimony.[10] Parent also attempted to introduce additional evidence into the record, outside the five day disclosure but that request was denied.[11]

On that date, Parent withdrew their own testimonial affidavit and refused to answer questions DOE had about other exhibits in evidence.[12] DOE requested to have other exhibits withdrawn from evidence as they intended to question Parent about them but that request was denied.[13] Parent continued to refuse to answer any questions as he was only appearing as an attorney and not the parent.[14] The hearing was adjourned to allow the DOE to draft and serve a subpoena on Parent, who was already at the hearing, to answer questions at the hearing he was already attending.

The parties returned for a final date of hearings on October 12, 2023. The DOE submitted a subpoena by email prior to this final hearing date but Parent refused to acknowledge it and refused to testify.[15][16] Parent requested to enter additional exhibits as evidence in the middle of the hearing which was denied. DOE requested an extension in order to submit written closings

---

[6] IHO II.
[7] 10/5/2023, Transcript, 76-78.
[8] Id. at 78-87.
[9] Id. at 87-103.
[10] 10/10/2023, Transcript.
[11] Id. at 223-228.
[12] Id. at 312-317.
[13] Id. at 317-319.
[14] Id. at 320.
[15] Id. at 337-350.
[16] Parent's position was that he was acting as an attorney and not as a parent. Moreover, he disputed the appropriateness and service of DOE's subpoena. However, Parent submitted multiple notices of appearance on this case that listed several other attorneys (including himself) as co-counsel and had at least one other attorney appear with him at two of the three hearing dates, and had another attorney draft the closing arguments. Parent was warned by the assigned IHO that his refusal to answer questions as parent may lead to an adverse inference which Parent voraciously objected to. Parent's own behavior extended a process that he himself decried as being too long and he consistently spoke over/interrupted both the IHO and the DOE attorney in an inappropriate manner. However, no adverse inference was drawn as there was enough evidence in the record to provide clarity in this case and it is understandable that a parent, despite being an attorney, may become unprofessional due to the interest in protecting their child's rights.

and that request was granted over Parent's objections. Parties submitted written closings on October 30th.

## FINDINGS OF FACT AND DECISION

After a full review of the record generated at hearing, I make the following findings of fact and determinations. Student has a brain injury that results in "severe impairments in the following areas: cognition, language, memory, attention, reasoning, abstract thinking, judgment, program solving, sensory, perceptual and motor abilities, psychosocial behavior, physical functions, information processing and speech."[17] She has been diagnosed with "spastic quadriplegic cerebral palsy….with Lennox – Gastaut Syndrome, Cortical Visual Impairment (CVI), neuromuscular scoliosis, and a seizure disorder."[18] Student is "non-verbal and non-ambulatory."[19] She has "highly intensive management needs, requiring a high degree of individualized attention and intervention throughout the school day."[20] Student's classification and entitlement to special education programming and services is not in dispute.

An Individualized Education Program ("IEP") dated December 12, 2023 ("2023 IEP") recommended special education programs and services consisting of: (i) Special Class, 12:1 (3+1), thirty-five times per week; (ii) Occupational Therapy ("OT"), individual service, five times per week, 60 minutes per session; (iii) Physical Therapy, individual service, five times per week, 60 minutes per session; (iv) School Nurse Services, individual service, daily per week, FTE 1:1, (v) Speech-Language Therapy ("SLT"), individual service, four times per week, 60 minutes per session; (vi) SLT, group service, once per week, 30 minutes per session; (vii) Vision Education Services, individual service, three times per week, 60 minutes per session ; (viii) Parent Counseling and Training, group service, once per month, 60 minutes per session; and (ix) Paraprofessional (Health) for safety, ambulation, feeding, individual service, daily, full time.[21] The 2023 IEP also recommended Assistive Technology ("AT") devices and services.[22] Student was also recommended transportation from the closest safe curb location along with limited travel time, 1:1 nursing services, and a lift as Student in is in a wheelchair.[23]

The Placement Recommendation was a DOE Specialized School (District 75).[24] A 12-month service and/or program was recommended.[25] The 2023 IEP states the student requires a number of extensive management needs; she needs breaks through her numerous therapy sessions, a learning environment that is free from distractions, a classroom with limited environmental complexity and visual clutter, climate control throughout her school, small class

---

[17] P-A-3.
[18] Id.
[19] Id.
[20] Id.
[21] P-E-40.
[22] Id. at 41.
[23] Id. at 43,44.
[24] Id. at 40.
[25] Id. at 41.

sizes, therapy should be done in environments that do not have a great deal of noise, position changes every hour or every two hours, along with numerous other needs.[26]

*Burden*

School districts have the burden of proof, including the burden of persuasion and burden of production, in IDEA due process hearings, except that a parent or person in parental relationship seeking tuition reimbursement for a unilateral parental placement has the burden of persuasion and burden of production on the appropriateness of such placement.[27]

*Prong I*

The IDEA provides that children with disabilities are entitled to a Free Appropriate Public Education ("FAPE").[28] A FAPE consists of specialized education and related services designed to meet a student's unique needs, provided in conformity with a comprehensive written Individualized Education Program ("IEP").[29] A school district has offered a student a FAPE when: (a) the board of education complies with the procedural requirements set forth in the IDEA; and (b) the IEP is developed through the IDEA's procedures and is reasonably calculated to enable the student to receive educational benefits.[30] In order to meet its substantive FAPE obligations, a district must offer a student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."[31]

As to Prong I of the *Burlington/Carter* standard, the DOE failed to meet its burden. The Principal of the District 75 school could not properly articulate how they could manage to combine Student's academic sessions with the Student's needs for nineteen hours of related services per week.[32] The Principal indicated the Student would not be able to fit all of her academic sessions and related services into the normal school day.[33] While the Principal did indicate that there is an after school program, she could not articulate with specifics how services may be administered to the student,[34] which is crucial given the number of services and management needs Student has. While on re-direct, DOE counsel attempted to rehabilitate the witness by clarifying that the services may be performed during academic sessions, such that additional hours would be unnecessary, that is still not sufficient; Principal established that therapy can happen on several different floors, in several different rooms (some of which may not be designed for the specific therapy being done), with no clear information on how the student may be moved between floors or rooms. It is also deeply concerning that Principal would indicate Student, with nineteen hours of services that also requires multiple paraprofessionals/assistants/nurses, could be adequately provided those services in a classroom

---

[26] Id. at 21-22.
[27] NYS Educ. Law § 4404(1)(c).
[28] 20 U.S.C. § 1400 (d)(1)(A).
[29] 34 C.F.R. § 300.13.
[30] *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982)
[31] *Endrew F. v. Douglas County Sch. Dist. RE-1*, 137 S.Ct. 988, 999 (2017).
[32] 10/5/23, Transcript. 117-132.
[33] Id. at 132.
[34] Id. at 125-126.

with twelve other students who also may have their own paraprofessional/assistants/nurses;[35] it is conceivable that there may be over two dozen individuals in one classroom at one time which would fly in the face of the direct management needs of the IEP. Moreover, the school does not have air conditioning in its hallways[36] which was a direct requirement under the DOE's own IEP.[37] Principal stated the therapists may use any location they deem appropriate for therapy but didn't address how the student can function in a non-airconditioned hallway if a therapist believed Student needed to have therapy in a hallway. Throughout the testimony, Principal's demeanor during the cross-examination was somewhat combative and she seemed unwilling to either answer questions or admit to deficiencies her school may have.[38] DOE also called a school psychologist who admitted on cross-examination that the DOE conducted minimal to no independent evaluations, assessments, observations of Student and it appears no psychological evaluation was done by the DOE in the last three years.[39] The DOE's witness did not seem to be able to sufficiently answer all of Parent's questions regarding the proper procedure for considering Parent's request for a nonpublic school placement and was not clear as to why parent's requests for a more limited class size or different placement were not considered. There was also an inordinate amount of testimony and conversation regarding music therapy and while the psychologist indicated she was aware of it, could not properly articulate why it was not considered as a part of student's related services; without any independent evaluations, updated assessments or observations, the DOE seemed to rely on the information provided by the Private School while cherry picking what services/placements they would offer. A review of the record herein establishes that the weight of the evidence supports the conclusion that the DOE failed to offer Student an educational program reasonably calculated to offer a FAPE for the 2023-2024 school year. It is unclear if and how the DOE would be able to implement the Management Needs at the proposed school location. Based on the DOE's failure to sustain its burden under the Education Law, the record establishes that the DOE failed to provide Student with a FAPE for the 2023-2024 school year.

*Prong II*

A private school placement must be "proper under the Act."[40] This means that the private school must offer an educational program which met the student's special education needs.[41] Parents seeking reimbursement "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate."[42] Subject to certain limited exceptions, 'the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's

---

[35] Id. at 135-141.
[36] Id. at 141.
[37] P-E-21.
[38] 10/5/23, Transcript 153-159.
[39] Id. at 173-186.
[40] Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 12, 15 (1993); Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 370 (1985).
[41] See Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112, 115 (2d Cir. 2007); Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998).
[42] *Gagliardo*, 489 F.3d at 112

placement is appropriate should be considered in determining the appropriateness of the parents' placement.'"[43]

Parents need not show that the placement provides every special service necessary to maximize the student's potential.[44] When determining whether a unilateral placement is appropriate, "[u]ltimately, the issue turns on" whether the placement is "reasonably calculated to enable the child to receive educational benefits."[45] A private placement is appropriate if it provides instruction specially designed to meet the unique needs of a student.[46]

The Second Circuit has set forth the standard for determining whether parents have carried their burden of demonstrating the appropriateness of their unilateral placement. No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits. Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.[47]

Private School is a "high specialized special education program in New York City created for children who suffer from brain injuries or brain-based disorders."[48] These students can be verbal, nonverbal, and non-ambulatory.[49] Students at Private School require 1:1 paraprofessionals and many other also require 1:1 nursing.[50] The school is specifically designed to meet the needs of students who have a "disability classification of Traumatic Brain Jury" which requires "a significant degree or high degree of individualized attention and intervention."[51] Private School creates its own IEP[52] for each student to help create an individualized program focused on "improving functioning skills appropriate to their cognitive, physical and developmental levels, through a collaborative and multidisciplinary approach which incorporates the best practices from the medical, clinical, and educational fields."[53] This IEP is so extensive the DOE utilized primarily this only in creating their own IEP for Student. Private

---

[43] *Gagliardo*, 489 F.3d at 112, quoting *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006)
[44] *Frank G.*, 459 F.3d at 364-65.
[45] *Frank G.*, 459 F.3d at 364; see *Gagliardo*, 489 F.3d at 115.
[46] 20 U.S.C. § 1401(29); Educ. Law § 4401(1); 34 CFR 300.39(a)(1); 8 NYCRR 200.1(ww); *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 386 (2d Cir. 2014).
[47] *Gagliardo*, 489 F.3d at 112, quoting *Frank G.*, 459 F.3d at 364-65.
[48] P-L-2.
[49] Id.
[50] Id.
[51] Id.
[52] P-C.
[53] P-L-3.

school offers a number of related services that designed to work with the student's academic schedules and can be done in a number of dedicated spaces.[54]

The Deputy Director of Special Education for Private School testified that student is in a 6:1:1 class with numerous related services along with assistive technology devices and 1:1 nursing and paraprofessionals throughout the day.[55] She is provided with proper air conditioning, transportation services, and limited travel time as required by her IEP.[56] She has also been making progress in her educational setting at Private School.[57] Student's IEP also notes progress she has made in a variety of physical, emotional, and academic areas. In academics, she is able to engage and understand the environment she's in and has progressed in in utilizing her assistive technology devices to communicate with others.[58] She can use assistive technology switches to help her make choices when answering academic questions which has helped her achieve literacy goals.[59] She is learning a number of "interest-based words" along with a number of concepts from books, videos, and other class activities.[60] She has increased her vocabulary as a result and she is getting better picking words associated with concepts with less support.[61] Her math skills are similarly improving as she is understanding the function and use of money to exchange for goods.[62] She has also progressed in her ability to engage in social situations by participating in group activities with classmates.[63] She has also progressed in her ability to use her Assistive Technology devices to communicate her needs as well as utilizing it during games, social situations, and other activities.[64] Similarly, she continues to make progress in her speech goals.[65]

I find that Parent has met their burden in proving that the private program offered an educational program which met Student's need under Prong II of the *Burlington/Carter* standard. Private School is providing the 1:1 and small group instruction Student needs to make academic progress. Moreover, Private School is implementing the Management Needs listed on the 2023 IEP and providing related services. Both the Deputy Director and the progress information from the Private School IEP demonstrate Student is making academic progress.

In reviewing the record before me, the weight of the evidence establishes that Student's individual special education needs were addressed by Private School and that the instruction offered was "reasonably calculated to enable the child to receive educational benefits."[66]

---

[54] Id.
[55] P-L-5.
[56] Id.
[57] Id.
[58] P-C-16.
[59] Id.
[60] Id.
[61] Id.
[62] Id. at 17.
[63] Id.
[64] Id. at 20-21.
[65] Id. 24.
[66] *Frank G.*, 459 F.3d at 364.

*Equities*

Even if a parent establishes a right to reimbursement under the IDEA, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant."[67] In making that equitable determination, a hearing officer may consider many factors, including, inter alia, whether a parent's unilateral withdrawal of her child from the public school was justified, whether the parent provided the Department with adequate notice of the withdrawal, whether the amount of private-school tuition was reasonable, whether the parent should have availed herself of need-based scholarships or other financial aid from the private school, and whether there was any fraud or collusion in generating (or inflating) the tuition to be charged to the Department, or whether the arrangement with the school was fraudulent or collusive in any other respect.[68]

Here, Parent provided the necessary Ten-Days' Notice of their concerns with the DOE's offer of a FAPE for Student for the school years at issue.[69] Therein, Parent detailed specific concerns.[70] Parent, furthermore, gave the DOE notice of their intention to unilaterally place the Student at the Private School.[71] No evidence was submitted at hearing describing the DOE's response to the Ten-Day Letter.

By way of relief, Parent seeks to have the balance of unpaid tuition sent directly to the Private School. Direct tuition funding is relief encompassed by the equitable remedial powers inherent in IDEA. See e.g. *Mr. and Mrs. A. v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403, 406 (S.D.N.Y. 2011) (parents may seek direct funding in the instance in which, "due to a lack of financial resources, [parents of a student with a disability] have not made tuition payments but are legally obligated to do so").

I find no issue with the reasonableness of the costs, including tuition, associated with the Private School. (P-P).[72] This is a school tailored to students with brain injuries that require a tremendous amount of supportive care to handle basic functions of living while simultaneously promoting academic progress; this was clear from the testimony, documents, and cross-examination and I have no reason to believe the tuition would be inappropriate in this case. Moreover, I find that the weight of the evidence establishes that Parent cooperated with the DOE and its CSE's efforts to develop an IEP and recommend a program and placement for the school years at issue.[73] Overall and after considering the record at hearing, I find that the equities support Parent's claim for direct funding of tuition for the 2023-2024 school year. Moreover, parent has requested that 1:1 nursing services and transportation be provided to the parent which are also granted.

---

[67] *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246-47, 129 S. Ct. 2484, 174 L. Ed. 2d 168 (2009).
[68] *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014).
[69] P-J.
[70] Id.
[71] Id.
[72] P-D.
[73] 10/10/2023, Transcript 276

The IDEA specifically includes transportation and any modifications or accommodations necessary to assist a student to benefit from their special education.[74] Similarly, New York State law defines special education as "specially designed instruction … *and transportation*, provided at no cost to the parents to meet the unique needs of a child with a disability" and requires school districts to provide disabled students with "suitable transportation to and from special classes or programs."[75] By the authority delegated by Congress, the New York State Legislature afforded all private school students full access to all special education services. Student requires transportation services that are commiserate with her recommendations in the IEP; for example, it stands to reason that a student who needs air conditioning in every part of her building for a school day would also require air-conditioning during transportation to and from school but the DOE failed to recommend that with no explanation. Similarly, the student requires dedicated nursing services to ensure she can function in a highly specialized and controlled educational program; this is a student who has difficulty functioning during her every day and it stands to reason she, as her IEP indicates, requires specialized services that the DOE did not demonstrate they can provide; rather they attacked the payment structure of the nursing service instead. Student needs nursing services and there was not an appropriate level of evidence to determine that the parent's choice was unnecessary as the DOE failed to demonstrate they were able to provide the service Student desperately needs. Transportation and nursing services are something this student requires to achieve a level of education commiserate with her peer and federal law.

---

[74] *See* 20 U.S.C. § 1401 [26]; 34 CFR § 300.34 [a] and [c] [16]

[75] Educ. Law § 4401 [1], [2] and [4] [a] [emphasis added], 8 NYCRR § 200.1 [ww] and 8 NYCRR § 200.2 [b] [1]; [a]; and *see Ne. Cent. Sch. Dist. v. Sobol,* 79 N.Y.2d 598, 608 [1992]

## **ORDER**

NOW, THEREFORE, IN LIGHT OF THE ABOVE FINDINGS OF FACT:

**IT IS HEREBY, ORDERED,** that the DOE shall pay to Private School the remainder of any tuition funds, totaling $306,544.00 dollars within 60 days of submission of a signed, notarized bill encompassing tuition costs owed by Parent to Private School for Student's attendance at Private School for the 2023-2024 school year; and it is further,

**ORDERED,** that the DOE shall fund door-to-door special education transportation services to and from Private School of the parents choosing for the 2023-2024 school year, totaling $111,180.00; and it is further,

**ORDERED**, that the DOE shall fund 1:1 nursing services of parents choosing, totaling $265,960.00 for the 2023-2024 school year;

Dated:  11/17/2023

                                                                                              _____/u/Michael Das_____  
                                                                                              Michael Das  
                                                                                              Impartial Hearing Officer

Case 1:23-cv-10388-KPF   Document 20-2   Filed 12/30/23   Page 13 of 16

Findings of Fact and Decision                                                                                                     12
Case Number 251257

## **NOTICE OF RIGHT TO APPEAL**

Within 40 days of the date of this decision, the parent and/or the Public School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

## DISTRICT EVIDENCE

| Exhibit | Title | Date | Pages |
|---|---|---|---|
| 1 | Due Process Complaint | 7/5/2023 | 11 |
| 2 | Private School Report and Education Plan | 11/29/2022 | 78 |
| 3 | Individualized Education Program | 12/1/2022 | 46 |
| 4 | Level 1 Vocational Assessment | 12/8/2021 | 3 |
| 5 | Social History Update | 12/8/2021 | 3 |
| 6 | IEP Meeting Minutes | 12/1/2022 | 6 |
| 7 | IEP Attendance Page | 12/1/2022 | 1 |
| 8 | Email from Special Education Teacher | 9/12/2022 | 1 |
| 9 | Email from Clerical Associate | 6/22/2022 | 3 |
| 10 | Email from School Psychologist | 6/27/2023 | 3 |
| 11 | Private School Quarterly Progress Report | 9/30/2022 | 19 |
| 12 | Skilled Nursing Referral Form | 12/1/2022 | 1 |
| 13 | Prior Written Notice and School Location Letter | 6/18/2023 | 14 |
| 14 | Medicaid Provider Policy and Billing Handbook | 3/29/2018 | 84 |
| 15 | Removed by IHO | | |
| 16 | Affidavit of School Psychologist | 10/2/2023 | 5 |
| 17 | Affidavit of Deputy Director | 10/3/2023 | 2 |

## PARENT EVIDENCE

| Exhibit | Title | Date | Pages |
|---|---|---|---|
| A | Due Process Complaint IH # 251257 | 07/05/2023 | 11 |
| B | Finding of Fact Decision IH# 210867 | 11/07/2022 | 20 |
| C | Private School IEP 2023-24 School Year | 11/29/2022 | 80 |
| D | Private School Enrollment Contract 2023-24 School Year | 07/02/2023 | 6 |
| E | DOE IEP | 12/12/2022 | 46 |
| F | Transportation Agreement 2023-24 School Year | 07/01/2023 | 6 |
| G | Nursing Agreement 2023-24 School Year | 07/05/2023 | 8 |
| H | Proposed Order of Pendency 2023-24 School Year | 08/30/2023 | 2 |
| I | Findings of Fact and Decision IH # 196228 | 08/11/2021 | 57 |
| J | Ten Day Notice 2023-24 School Year | 06/20/2023 | 2 |
| K | Withdrawn | | |
| L | Affidavit of Deputy Director | 9/27/2023 | 5 |

## IHO EXHIBITS

| Exhibit | Title | Date | Pages |
|---------|-------|------|-------|
| I | Pendency Discussion | Various | 5 |
| II | Hearing Date Discussion | Various | 10 |

Findings of Fact and Decision                                                                 15
Case Number 251257

## APPENDIX

| Redacted Information | Term Used In FOFD |
|---|---|
| ███████████ | Student |
| Patrick Donohue | Parent |
| Jared Arader | DOE Attorney |
| Bay Ridge Preparatory School | Private School |
| Dorothy Pfeiffer | School Psychologist |
| Dr. Greer Phillips | Deputy Director of Special Education |
| Sara Beck | Special Education Teacher |
| Sharon Self | Clerical Associate |