Exhibit C

NCF5gruC                        phone conference

```
1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  MADELINE GRULLON, et al.,

4                  Plaintiffs,

5           v.                        23 Civ. 10388 (KPF)
                                      Telephonic Proceeding
6  DAVID C. BANKS, et al.,

7                  Defendants.

8  ------------------------------x
                                      New York, N.Y.
9                                     December 15, 2023
                                      3:55 p.m.
10
   Before:
11
                    HON. KATHERINE POLK FAILLA,
12

13                                    U.S. District Judge

14
                         APPEARANCES
15

16  BRAIN INJURY RIGHTS GROUP, LLC
         Attorneys for Plaintiffs
17  BY:  RORY J. BELLANTONI

18  SYLVIA HINDS-RADIX
         Corporation Counsel for the City of New York
19  BY:  JAIMINI AJAY VYAS
         THOMAS LINDEMAN
20       JASON W. IMBIANO
         Assistant Corporation Counsel
21

22

23

24

25
```

NCF5gruC                          phone conference

1              (The Court and all parties appearing telephonically)

2              THE DEPUTY CLERK:  Counsel, please state your name for

3      the record, beginning with plaintiff.

4              MR. BELLANTONI:  Good evening, your Honor.  Rory

5      Bellantoni, B-E-L-L-A-N-T-O-N-I, for the plaintiffs.

6              THE COURT:  Sir, good afternoon, and thank you very

7      much.

8              And representing the defendants this afternoon?

9              MR. VYAS:  Good afternoon, your Honor.  My name is

10     Jaimini Vyas, and I am joined in my office with Thomas Lindeman

11     and Jason Imbiano.

12             THE COURT:  OK.  Good afternoon to each of you as

13     well.

14             We are having this conference, given its urgency, by

15     telephone, but as a result of that and given the not great

16     telephone equipment we have here at the federal government, I'm

17     going to ask each of you to just be as loud and as slow as you

18     can be.

19             Mr. Bellantoni, I finished a trial yesterday and I

20     know that's not something you care about, but I immediately

21     finished and was told that there was a need for a TRO.  And I

22     was a little bit confused because, as I understood it from the

23     docket, this case was filed on November 28th without an

24     application for a TRO so I'm trying to figure out what's

25     happened between then and now that has brought about the

NCF5gruC                          phone conference

1    urgency, sir.

2              MR. BELLANTONI:  Your Honor, I hope you can hear me.

3              THE COURT:  I can, sir.

4              MR. BELLANTONI:  There have been a couple of these

5    cases, your Honor, filed by myself on behalf of a number of

6    students, and what happened is there have been some payments,

7    not for these students, for others.  The urgency here, is that

8    going back from July 5 until present, when about 30 students at

9    iBRAIN started the new school year and had pendency there,

10   there had been no pendency payments for these 30 students for a

11   number of months.  And we were talking maybe $4.5 million worth

12   of payments, your Honor.  Given that payments were made in some

13   other cases, the school had some revenue.  So when we brought

14   these cases initially, there was the first part of Grullon

15   Judge Clarke had that was seeking pendency orders to determine

16   where pendency was, pendency at iBRAIN.  That case was mooted

17   out because the DOE admitted or conceded, through pendency

18   orders or agreement, that the pendency for the student was at

19   iBRAIN.  That case ended.

20             Under the *Mendez* case, which is cited in our papers,

21   the Second Circuit said when it comes to private placements,

22   pendency is placement, not payment, you are entitled to an

23   order for automatic placement under 1415(j) under the IDEA but

24   payment, you can only seek automatic injunction under 1415(j)

25   if the placement of the students are jeopardized.  The DOE

NCF5gruC                          phone conference

1    hadn't made payments for a number of students up until

2    November.  Some payments had been made at about that time, the

3    23rd, the 24th, so when we filed this case the school was not

4    in danger of either missing another payroll or closing because

5    of nonpayment.  The payment that has been made for other

6    students that carry the school was spent on payroll.  We are

7    now at a point where there is a payroll that was supposed to be

8    made today for the school.  The DOE has conceded that iBRAIN is

9    the pendency placement and as of right now there is $500,000

10   that is outstanding for these three clients in tuition only.

11   That doesn't include transportation and nursing.

12   Transportation and nursing would not necessarily close the

13   school, it might affect individual services the students get,

14   but right now one of the urgent matters is the payroll for the

15   200-something employees at the school that, according to

16   Mr. Mielnik in his declaration, wouldn't be made today if these

17   payments were not made.  Now --

18            THE COURT:  Mr. Bellantoni, thank you.  You actually

19   have to let me get a word in edgewise from time to time, sir.

20            To begin, Mr. Bellantoni, what is the enrollment at

21   iBRAIN?  How many students in total?

22            MR. BELLANTONI:  There is, approximately, between the

23   Brooklyn campus and the New York City campus, maybe 60

24   students, your Honor.  Of those 60 I know 35 have pendency but

25   in this case obviously we are only talking about these five

NCF5gruC                          phone conference

1     students -- four students.

2          THE COURT:  OK, but I guess I'm going to reask my

3     question, sir, because it sounds like what you are saying is

4     that the determination as to whether to file a TRO or not is

5     not made dependent on the particular student on whose behalf

6     you are litigating but just how close your client is to

7     insolvency.  Is that why my Rodriguez case, which is another

8     iBRAIN case I have before me, does not have a TRO but this case

9     does, because you have a payroll today?

10         MR. BELLANTONI:  Well, first, your Honor, I represent

11    the parents, not the school.

12         THE COURT:  Well, sometimes I wonder, sir.  But OK, go

13    on.  Go on.

14         MR. BELLANTONI:  I bring this on behalf of the parents

15    because if the school closes, the students can't go to their

16    educational placement and with these three students this

17    tuition is owed, it has been owed for six months now.  In two

18    weeks we go into the second half of the year where there would

19    be pendency payments due for the second half of the year and it

20    is not like these are contested, your Honor.  And I did not

21    bring the TRO back when I filed the case because whether it was

22    these students or others, their placements were not in danger

23    at the time I filed the complaint.  Now we are moving to the

24    situation where the students could be displaced because this

25    payment that the DOE conceded over the summer they owed and

NCF5gruC                              phone conference

1    would make, has still not been made.

2              THE COURT:  Sir, when you say the placement is in

3    jeopardy, I don't understand you to be saying that these

4    particular students, there is a letter saying, you know,

5    Ms. Grullon, your child must go; Ms. Hidalgo, your child must

6    go; Mr. Donohue, Ms. de Paulino, your children must go.  What

7    you are saying is the placement is on the verge of being lost

8    because the entire school is on the verge of shutting down.  Am

9    I understanding that correctly?  Or is there in fact a specific

10   determination or decision being made to require these students

11   to leave?  That's what I did not understand.

12             MR. BELLANTONI:  There has not been a selective

13   decision to say to these clients because the DOE hasn't paid

14   pendency you have to go.  It is the latter or the -- I don't

15   know first or second, it is more, your Honor, now that because

16   the pendency is still outstanding, the school may not be able

17   to provide the services that it was directed to provide or that

18   it -- I say directed, that it prevailed at the last

19   administrative hearing, iBRAIN was found to be the current

20   educational placement for these students pending the new school

21   year and the new IEPs that were filed, the new due process

22   complaint, but this is their last agreed upon, by

23   administrative order, educational placement, and indeed if this

24   pendency isn't paid as the DOE said it would make these

25   payments, there may not be a school or services for the

NCF5gruC                         phone conference

1    children to return to.

2             THE COURT:  Mr. Bellantoni, I am going to return to

3    you in a few moments, sir, because I do want to discuss Mendez

4    with you and what it means and what I am not sure it means.

5             Mr. Vyas, I would like to turn to you, sir.  Don't

6    worry, I have harsh questions for both sides here on this

7    Friday afternoon and I do want to understand why DOE has not

8    made payments since August, especially given not merely this

9    case and the many other cases that are being filed in this

10   district about this issue, but given the now 20-year litigation

11   before Judge Preska regarding DOE's dilatory conduct in making

12   the payments it needs to under IDEA.

13            So, why have you not made the payments, sir?  And by

14   you I mean your client.

15            MR. VYAS:  Your Honor, it is my understanding that

16   payments are being made periodically including for these

17   students just based on a view of the documents that plaintiffs

18   filed in this matter.  It seems that at least part of the

19   payments owed to the pendency of the students have been made.

20   It is also my understanding from the declaration filed by

21   Ms. Sapna Kapoor in another matter that since July 5 of this

22   year, until today, the DOE has paid over $6 million to the

23   school.

24            The DOE acknowledges its obligations under the -- it

25   recognizes these pendencies and it is continuing to pay off the

NCF5gruC                         phone conference

1    amounts according to its practices, your Honor.

2              THE COURT:  Well, let's please talk about those

3    practices a little bit more please, sir, because I think what

4    Mr. Bellantoni believes -- and I'm not sure I do believe

5    this -- is that your client, DOE, at the moment pendency is

6    conceded or acknowledged by your client, has to fund

7    everything.  Now, I'm not willing to go there but you just said

8    they're continuing to pay off amounts.  What is the protocol

9    that DOE uses to pay for pendency placement while the due

10   process complaint process goes on?  Are you paying it monthly?

11   I just want to understand what -- I assume you are not paying

12   it all a hundred percent or we wouldn't have this case.  What

13   are you paying?  On what formula?

14             MR. VYAS:  Your Honor, I am not aware of that formula.

15   I am new to the office and to the matter.  Your Honor, may I be

16   allowed to refer this question to Mr. Lindeman who is present?

17             THE COURT:  Of course.

18             MR. VYAS:  Thank you.

19             MR. LINDEMAN:  Your Honor, this is Thomas Lindeman.

20   Apologies for just jumping in here.

21             THE COURT:  No, no.  I want someone who can answer the

22   question.  If it is you, sir, please answer the question.

23             MR. LINDEMAN:  Sure.

24             The way -- there are two separate questions here, I

25   think.  They're related questions but the questions are how

NCF5gruC                          phone conference

1   does -- and Mr. Bellantoni has stated that the iBRAIN school is

2   on the verge of financial ruin although I question that, I

3   don't necessarily believe it.

4          The way that the Department of Education makes those

5   payments, we receive the agreements that the parents sign as

6   well as the usually an affidavit from someone at the school

7   stating what the tuition is, what the related service is, the

8   tuition fees pay for, what those amounts are, what the totals

9   are, then it pays in installment plans throughout the year

10  usually, I believe, for every single matter that we have paid

11  out through this year those payments are from the first day of

12  school and the first day of pendency, which is July 5, through

13  12/31, so it is the end of this calendar year.  That

14  $6.1 million/6.2 million amount that Mr. Bellantoni referenced

15  is explicitly payments made to cover that period.  Once the new

16  years rolls over, more payments will come due.  For most of

17  these kids there is about $250,000 to $280,000 in total

18  payments due over the course of the school year but those are

19  due in two parts, when a final order comes in and order or

20  later an TRO decision, or sometimes even a decision from the

21  district, when the pendency obligation ends and then we are

22  guided by the FOP.

23         For the other elements that we are discussing here --

24  nursing, transportation -- the documentation is sometimes a

25  little bit different; a lot of hearing officers and state

NCF5gruC                          phone conference

1    review officers have found that we need additional documents

2    and it is the DOE's policy to seek additional documentation

3    when possible, because when we are talking about amounts of

4    money this large, $600,000 to $800,000 per student, tens

5    of millions of dollars every year, when all of that is being

6    paid through pendency the taxpayers aren't ever going to get

7    any of that money back.  The goal here is, of course, to make

8    sure that all of these students have placements and they are

9    receiving services but also to make sure all of our Is are

10   dotted and our Ts are crossed.  So a lot of things are being

11   made, more payments will be made.  It is not clear to me that

12   right now that there is any risk to plaintiffs while those

13   administrative processes are gone through, but that is

14   accounting work more than it is people work.

15           THE COURT:  Mr. Lindeman, just a few follow-up

16   questions, please, sir.  Thank you very much.

17           Mr. Lindeman, you have seen the complaint in this case

18   and the four students to which it refers?

19           MR. LINDEMAN:  I have, your Honor.

20           THE COURT:  Thank you.

21           And sir, do I understand correctly that at least as a

22   consequence of the litigation before Judge Clarke, DOE concedes

23   that the pendency placement for each of these students, CB, LS,

24   SJD, and RP, is iBRAIN?

25           MR. LINDEMAN:  Yes, your Honor.  Those determinations

1    were reached at the administrative level but they were at issue

2    in the case in front of Judge Clarke.  We met a few times.

3    There were two other students, maybe three other students

4    involved in that matter as well --

5              THE COURT:  Yes.

6              MR. LINDEMAN:  -- those students, I believe, are in

7    the other matter in front of you now, the de Jesus Rodriguez

8    case.

9              THE COURT:  Yes.

10             MR. LINDEMAN:  But all have pendency at iBRAIN, they

11   are at iBRAIN, they are receiving their education there, they

12   are receiving transportation to and from the school as they

13   need it, and I believe for the students who nursing is part of

14   their pendency, they are also receiving that.

15             THE COURT:  Mr. Lindeman, are you in a position to

16   tell me today that with respect to the actual, what I will call

17   tuition payments or service payments to iBRAIN, that for each

18   of the four students before me now payments have been made

19   equivalent to what is owed from the first day of pendency

20   through December 31st of 2023?

21             MR. LINDEMAN:  Your Honor, I'm not.  I can say that

22   some amount has been paid but I am not completely sure on all

23   of the details of that in this case.  Obviously we were served

24   late last week, you know, assigned in the middle of this week

25   when it became clear that a temporary restraining order was

1   going to be issued but, unfortunately for me personally, I

2   spent a part of this day with Mr. Bellantoni in the Eastern

3   District arguing about a different set of students, all of whom

4   have received payments.  So I am sure that payments are being

5   reviewed and processed for these students and I know some money

6   has been paid but I don't have all of those details today.

7         THE COURT:  Would you know, sir, by Monday, end of

8   day, what has been paid?  Why I ask, sir, is your colleague

9   Mr. Vyas made a very impassioned argument, and then you stepped

10  in, about the fact that payments -- he actually said payments

11  have been made, payments are made periodically, including on

12  behalf of these students.  And then from you, sir, I learned

13  about the installment plan, the first being the first day of

14  pendency through December 31st.  I understood from the

15  certainty with which you made that statement that you were

16  suggesting that payments have been made for these students.  So

17  I appreciate you now telling me that you have not been able to

18  confirm that and, sir, I do appreciate that you are getting a

19  lot of cases thrown at you at once and are trying to get a lot

20  of data at once, but if you are making an argument to me that I

21  don't have to order any payments because you all are making

22  those payments, I need to know what you have actually paid.

23  And so, when can I know how much you paid?

24        MR. LINDEMAN:  Your Honor, we can certainly put in the

25  effort to get that information and provide it to the Court.

NCF5gruC                          phone conference

1   With respect to that, though, our argument isn't necessarily

2   that you don't need to make that argument that payments aren't

3   being made, payments are being made and they will continue to

4   be made.  But plaintiffs aren't seeking a TRO because, you

5   know, they think that payments won't be made ever.  They are

6   seeking a TRO because they believe some payments have not been

7   made now and as far as their burden to receive a TRO or

8   preliminary injunction, they haven't met it.  So I am going --

9   we will keep working with our clients, Mr. Vyas will keep

10  working.  We have either filed papers or made appearances in

11  now five or six of these this week alone.  Most of these

12  students have received payment or are receiving payments.

13  Sometimes it takes a few days from process by the Department of

14  Education to appearing in an iBRAIN bank account, which

15  obviously adds to -- the simple, the moving of money adds to

16  the confusion here sometimes.  But, these will all be done.  By

17  Monday, maybe by Tuesday I'm sure we can provide an update on

18  when all of these can reasonably be expected, or in the case of

19  students who are still seeking documentation from what

20  documentation we still need, if that would be helpful.

21          THE COURT:  It would be helpful and I would appreciate

22  that and I just want to make sure I want to recite that back to

23  you so we both have the same understanding.

24          With respect to the four students at issue in this

25  case, it is your belief that by Monday, at latest Tuesday, you

NCF5gruC                         phone conference

1    will be able to provide me an outline of what has been paid on

2    their behalf, what remains to be paid on their behalf, and what

3    is the status of the payments to, for example, transportation

4    entities or nursing services, whether and to what extent those

5    have been paid as well.

6              Do I understand that direct correctly, sir?

7              MR. LINDEMAN:  Yes, your Honor.

8              THE COURT:  OK.  I understand that.  Mr. Lindeman you

9    were making a legal argument and I didn't know whether you were

10   going to continue doing that or Mr. Vyas was going to continue

11   doing that.  May I understand, recognizing that you have had

12   this for about a day, what your opposition is to the current

13   motion for a temporary restraining order?

14             MR. LINDEMAN:  I will hand it back to my colleague,

15   your Honor.

16             THE COURT:  Yes, sir.

17             Mr. Vyas I will hear you now

18             MR. VYAS:  Your Honor, first, I apologize.  When I

19   said that payments are being made I was relying on the

20   submissions by plaintiffs' counsel and at least for one student

21   they have stated that all tuition has been paid and that is

22   student RP in this case here.  And, your Honor, as to the

23   arguments I reiterate that the DOE concedes that, and has

24   always maintained that the students have pendency at iBRAIN,

25   that it is obligated to pay for the tuition, nursing, and

NCF5gruC                           phone conference

1   transport as has been ordered under the underlying

2   administrative orders.  And with respect to the matter here,

3   the issue of payments does not create that emergency that

4   crosses the threshold of Mendez.  I was told by Mr. Lindeman

5   that Judge Hall said this afternoon that the plaintiffs have

6   not here provided sufficient proof or any proof of, evidence of

7   the dire financial situations of these non-parties to cross the

8   threshold of the preliminary injunction requirement to grant

9   plaintiffs the order they seek here.

10          So, those are my arguments, your Honor, and plaintiffs

11   rely on these two letters sent to the students, they both name

12   a student that is not a party to this litigation, it is

13   somebody named Sebastian, they were both drafted on the same

14   date, and then they rely on this Munich letter or declaration

15   that Ms. Kapoor's declaration states contains inaccuracies,

16   mathematical as well as about whether payments have in fact

17   been made or are outstanding.  It is my understanding that this

18   office -- my office has reached out to both Mr. Mielnik and the

19   CPA upon whose information he relied for documentary evidence

20   and proof to sort of audit and cross-check those claims but

21   that information has not been forthcoming.

22          And so, your Honor, our position is that this is not

23   an emergency.  Several judges have taken or have found the

24   same.  For instance, I was, on Tuesday, I was in Judge Ramos'

25   courtroom with Mr. Imbiano and Judge Ramos also reached the

same conclusion which is that the DOE acknowledges the pendency

placement of these students, acknowledges its obligation to

issue payments as ordered under the administrative orders and

has been performing, according to its ordinary payment

procedures, which I concede I do not know what they are.

Mr. Lindeman has a better understanding and I will develop that

in due course, your Honor.

            THE COURT:  Yes, by which you mean over this weekend

sir, yes?  OK.

            Mr. Vyas, you mentioned Ms. Kapoor's letter.  Am I

correct that is not actually filed on the docket of any case

anywhere, that is something that is being submitted in

connection with either the other cases before other judges or

do I have this document too?

            MR. VYAS:  You do not, your Honor, not in this case.

            THE COURT:  OK, so it is tough for me to agree or

disagree with your characterizations of the letter not having

seen it.  I appreciate what you are saying.  And so, again, let

me understand, Mr. Vyas, if you are willing to share with me,

how you conceive of Mendez.  I imagine you are focusing on the

part of Mendez -- and it was said at he beginning -- that the

stay put provision does not entitle plaintiffs to an automatic

injunction directing funding in the absence of a showing that a

delay or a failure to pay has threatened their child's

placement.  How do you interpret that language in Mendez, sir?

NCF5gruC                            phone conference

1   Do you interpret that from the perspective of the student

2   losing a place as distinguished from the perspective of the

3   school losing its abilities to operate or something else?

4          MR. VYAS:  Your Honor, it is the individual student,

5   it is to be taken on a case-by-case basis. whether this

6   particular student is going to lose his, her, or their

7   placement at that school.

8          THE COURT:  OK, but Mr. Vyas, taking Mr. Bellantoni's

9   argument, he says if you all don't abide by your obligations

10  under IDEA, the whole school is going to close and none of

11  these four students, and indeed none of the 60 students on the

12  two campuses is going to be able to have their placement.

13         What is your reaction to that argument, please, sir?

14         MR. VYAS:  Your Honor, the DOE has been making

15  payments as both I and Mr. Lindeman presented to the Court.

16  Since July 5th the DOE has paid over $6 million, provided it

17  was $6 million to iBRAIN, the school, and only -- and your

18  Honor, I again apologize to the Court, but I have only had time

19  to briefly review plaintiffs' counsel's submissions and looking

20  at the figures there the DOE has also been providing payments

21  towards nursing and transportation.  So, it is following

22  through on its obligations, perhaps not at the pace and as

23  quickly as iBRAIN wants.

24         THE COURT:  All right.  Well, you are understanding,

25  sir, that at the moment -- and by the way, I haven't concluded

1    this hearing so who knows I might grant the TRO and then you

2    will see what you owe -- but I do want to make sure I

3    understand your point, which I think I do now, which is that

4    you are contesting the accuracy of the factual statements that

5    have been made to me by iBRAIN regarding the funds that have

6    been received from DOE and regarding the financial status of

7    the school, and this would be there is a declaration, it is

8    Mr. Mielnik, and you are disagreeing with the substance of that

9    declaration; correct, sir?

10          MR. VYAS:  Yes, your Honor.

11          THE COURT:  All right.  I am not saying I agree with

12   you, sir, but I do understand it.

13          Mr. Bellantoni, returning to you please, sir.

14   Mr. Bellantoni, I guess I would like to understand, and I hate

15   on a Friday afternoon to start getting into hypotheticals so I

16   will try hard not to, but let's just say, sir, as I give you a

17   hypothetical, that DOE had completely paid up what it had owed

18   under every IHO decision or every agreement they had made and

19   it still wasn't enough to cover iBRAIN's operating expenses.

20   Would they be required to pay more simply because otherwise the

21   school would close?

22          MR. BELLANTONI:  No.  No, absolutely not, your Honor.

23   The money that the plaintiffs are seeking here has been ordered

24   already by administrative law judges as a result of prevailing

25   in the last agreed upon placement.  That is, either the DOE

1    didn't appeal or we didn't appeal.  We are not asking for money

2    as we go, we are asking for the money that we are owed.  As far

3    as payment goes, part of the problem is that the DOE does not

4    have a set process.  If they were paying monthly, then I

5    wouldn't be here.  There was no pendency paid for the students,

6    for my clients that are entitled to pendency from July 5 until

7    we started bringing the TRO actions in November.  The judges

8    that we have appeared before -- Judge Ramos and Judge Hall, who

9    have not granted the TRO -- it just so happens by the time we

10   got in to court tuition had been paid on those cases.  This is

11   one of the few where, as we come in to court to which it is

12   still outstanding and there is a placement that is in jeopardy,

13   whether it be -- and, Judge, I'm not sure it makes a difference

14   if a single student gets a letter saying because you haven't

15   paid we are going to kick you out -- I could see the DOE

16   claiming that that would be contrived -- versus because this

17   tuition hasn't been paid.  And when I pay this tuition, in the

18   memo of law the amounts that are outstanding reflect half of

19   the year.  There is tuition that is due in January but I

20   haven't sought that because that's not ripe yet, that's the

21   second half of the school year.  And, clearly, Mendez told

22   me -- and I litigated Mendez -- that I can't ask for this

23   pendency prospectively.  In other words, even though it can't

24   be paid prospectively, to ask for the rest the school year when

25   the students may get decisions in their favor, which would stop

1    pendency versus losing and if there is an appeal it doesn't.

2              So these amounts are half of the tuition for the

3    extended school year which goes from July all the way around

4    again until June.  These students who have had a brain injury

5    require an extended school year so this is a 12-month year.

6              One of these students, RP, was paid, to date.  That's

7    not for the year, that's to date.  Counsel was, I think,

8    discussing whether there have been partial payments, partial to

9    the extent that one student's tuition has been paid, the other

10   three have not, nor have partial payments been made towards the

11   other three tuitions for the first half of the school year.

12             THE COURT:  Mr. Bellantoni, is it your view that DOE

13   owes to iBRAIN all payments through and including December 31,

14   2023?

15             MR. BELLANTONI:  For these three students right now,

16   yes, your Honor, because that is -- that is how I -- the DOE

17   has typically paid tuition.  I guess there may have been a

18   point in time where they paid three months and three months.

19             THE COURT:  Yes.

20             MR. BELLANTONI:  They typically pay six months.  I

21   know it would be better for everybody if they did it monthly,

22   although I don't know that they can do that logistically, but

23   there have been no payments for the first half of the school

24   year, which ends in two weeks, for these students.  And that's

25   what pendency is, it is supposed to allow them to maintain

1    their placement.  I know in Mendez the Second Circuit said that

2    there is a certain amount of leeway that has to be given to the

3    DOE and we can't upset their regular process.  The problem,

4    your Honor, is there is no regular process.  I have one or two

5    students who maybe got full tuition at the beginning of this

6    process mid-November; other students we are still waiting for.

7    It seems like these actions have to be commenced in order to

8    get the pendency that the students require.

9             As I said before, we were in front of Judge Clarke on

10   these cases.  I mean, I believe Mr. Panteloni gave a

11   declaration in mid-August saying that pendency at iBRAIN for

12   all of these students and they were processing payment.  But

13   three, four, five months later, still no payment.  And to think

14   that there is not going to be repercussions for the school or a

15   transportation provider, or a nursing provider who get paid

16   based on the free appropriate public education when these

17   students win, the DOE must fund these placements.  And the

18   students won these cases.  We re not talking about a wait list,

19   your Honor.  We are not talking about asking for a blank check.

20   The administrative judges -- they're not judges but the

21   administrative officers, have made their rulings.  We provided

22   documentation many times -- we, as the attorneys for the

23   parents, provide documentation that the school or the nursing

24   provider or the transportation provider provided already to the

25   DOE.  In the case of Judge Ramos' case, the documentation they

NCF5gruC                         phone conference

1    said they needed it, we provided in August, August 3rd.  And

2    they requested it again in September, October, up until

3    payments were made in November.

4         So there is no reason why we wouldn't or the schools

5    wouldn't work with the DOE if they want their payment and I

6    don't want my students kicked out of these programs.  Of course

7    we work with the DOE.  But then we reach a point like now where

8    we are $488,000 in tuition is no small thing, and none of that

9    has been paid, and when I say none of that I mean partially for

10   the students.  The one student, RP, has been paid in full.  The

11   other student, LS, in addition to the pendency, she won her

12   underlying epilepsy for the school year.  The DOE was ordered

13   to fund the entire school year.  I'm not even asking for that

14   here yet.  There is a cause of action in the complaint but all

15   I am seeking right now is the pendency for the first half of

16   the school year.

17        THE COURT:  Mr. Bellantoni -- Mr. Bellantoni -- number

18   one, you have to slow down.  Number two, you have to not yell

19   because you are coming very loud through.  And also, please

20   don't use the student's name, sir.  She is LS to us.  She is LS

21   and she will always be LS to us.

22        Mr. Bellantoni, thank you very much.

23        MR. BELLANTONI:  Apologies, Judge.

24        THE COURT:  Yes.  I know.  You are passionate man,

25   sir, but don't be messing up with the confidentiality that

1   adheres to your student's identification.

2          Mr. Vyas, returning to you.  Mr. Vyas, I am going to

3   give you the hypothetical now.  Let's say Mr. Bellantoni is

4   right, you look at your records and RP is paid in full and the

5   other three are not paid at all.  Are you going to make efforts

6   really promptly to start paying those and how quickly can that

7   be accomplished?

8          MR. VYAS:  Your Honor, we will make prompt efforts to

9   pay those and I will have a conversation with DOE and send them

10  an e-mail before I leave the office today.

11         THE COURT:  OK.  Let's do this, because I don't want

12  people just to waste anyone's time.  I want to look at my

13  calendar so please excuse me while I do that.  Tuesday, at

14  2:00 p.m., we are going to resume this hearing.  Tuesday is

15  December 19th, 2:00 p.m. is 2:00 p.m.  By then I will have

16  clarity because defendant's counsel will have given me a

17  detailed recitation of what has and has not been paid on behalf

18  of these students and we will go from there.  So I will take a

19  letter at any -- well, I would like the letter by 12 noon on

20  that Tuesday but certainly I welcome it even earlier, but I am

21  assuming that you guys will be spending some part of today and

22  some part of this weekend a whole lot of Monday getting that

23  information to me.

24         All right.  We are going to continue this on Tuesday

25  because this is too important not to.  I will leave it at that.

NCF5gruC                              phone conference

1           Mr. Bellantoni, is there anything you need to tell me
2    today or can we resume on Tuesday?
3           MR. BELLANTONI:  Tuesday is fine, your Honor.  Are we
4    going to be in person or telephonically?
5           THE COURT:  The parties will tell me in their letter
6    that I am going to get at noon.  I can do either, I can do
7    either.  If it is easier for you guys to do it telephonically,
8    we will do it telephonically.
9           Mr. Bellantoni, is that easier for you, sir?
10          MR. BELLANTONI:  Yes, Judge.  I would do either but
11   yes, Judge, that is easier.
12          THE COURT:  Fine, phone it is.
13          Mr. Vyas, by Tuesday you are going to be really
14   studied on this stuff.  All right, sir?
15          MR. VYAS:  Yes, your Honor.
16          THE COURT:  OK.  Go forth, everyone.  Have great
17   weekend but spend a lot of that weekend thinking about me and
18   my case.  And Mr. Vyas, I'm going to ask you to obtain a copy
19   of the transcript of this proceeding in the ordinary course.
20          MR. VYAS:  Yes, your Honor.
21          THE COURT:  All right.  Thank you all very much.
22   Happy holidays.  See you Tuesday by phone.
23          We are adjourned.
24                              o0o
25