UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
**MADELINE GRULLON** as Parent and Natural Guardian
of **C.B.,** and **MADELINE GRULLON** Individually, *et al.,*

    *Plaintiffs,*

                                                                           23-cv-10388 (KPF)

   -against-

**DAVID C. BANKS**, in his official capacity as Chancellor of
the New York City Department of Education and the **NEW
YORK CITY DEPARTMENT OF EDUCATION,**

    *Defendants.*
-------------------------------------------------------------------------X

# PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR AN AUTOMATIC/PRELIMINARY INJUNCTION

Rory J. Bellantoni, Esq.
Brain Injury Rights Group, Ltd.
*Attorneys for Plaintiffs*
300 East 95th Street, #130
New York, New York 10128
rory@pabilaw.org

**TABLE OF CONTENTS**

*Page(s)*

**TABLE OF AUTHORITIES**……………………………………………………………….....i

**PRELIMINARY STATEMENT** ……………………………………………………….…..1

**ARGUMENT** …………………………………………………………………………….……1

    I.    THE PLAINTIFFS MEET THE REQUIREMENTS FOR AN
AUTOMATIC/PRELIMINARY INJUNCTION UNDER IDEA ………….…2

           *A.*  *The Plaintiffs Can Show a Likelihood
of Success on the Merits* …………………………..……………….……...2

           *B.*  *The Plaintiffs Can Show a Likelihood of
Irreparable Harm* ………….........................................................................3

           *C.*  *The Public Interest is Served by the Issuance of an
Injunction* …………………………...……………………………………5

           *D.*  *The Balance of Hardships Favor the Plaintiffs* ……..……………..…......6

    II.    PENDENCY ACTS AS AN AUTOMATIC INJUNCTION REQUIRING
DEFENDANTS TO FUND PLAINTIFFS' EDUCATIONAL
PLACEMENTS DURING PENDENCY OF THE DUE PROCESS
PROCEEDINGS……………………………………………………………..…...7

**CONCLUSION** …………………………………..…………………………………………..11

# TABLE OF AUTHORITIES

*Page(s)*

**Federal Cases**

*Abrams v. New York City Dep't of Educ.*,
  No. 20-CV-5085 (JPO), 2022 WL 523455 (S.D.N.Y. February 22, 2022) ................................ 3

*Ali v. Wuchte*,
  No. 22CV01532HGLGD, 2022 WL 3682303 (E.D.N.Y. Aug. 25, 2022) ................................. 1

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*,
  290 F.3d 476 (2d Cir. 2002) ..................................................................................................... 8

*Cochran v. D.C.*,
  660 F. Supp. 314 (D.D.C. 1987) ............................................................................................... 4

*Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*,
  689 F. Supp. 197 (S.D.N.Y. 1988) ............................................................................................ 4

*Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*,
  368 F. Supp. 2d 313 (S.D.N.Y. 2005) ....................................................................................... 7

*M.R.*,
  744 F.3d ..................................................................................................................................... 8

*Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*,
  386 F.3d 158 (2d Cir.) .......................................................................................................... 7, 8

*Mendez v. Banks*,
  65 F.4th 56 (2d Cir. 2023) ................................................................................................ passim

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
  297 F.3d 195 (2d Cir. 2002) ..................................................................................................... 1

*Neske v. New York City Dep't of Educ.*,
  No. 19-CV-2933 (VEC), 2019 WL 3531959 (S.D.N.Y. Aug. 2, 2019) .................................... 9

*New York v. United States Dep't of Homeland Sec.*,
  969 F.3d 42 (2d Cir. 2020) ....................................................................................................... 1

*Petties v. D.C.*,
  881 F. Supp. 63 (D.D.C. 1995) ............................................................................................... 10

*Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*,
  96 F.3d 78 (3d Cir. 1996) .......................................................................................................... 8

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
   752 F.3d 145 (2d Cir. 2014) .................................................................................................. 2, 7

*Ventura de Paulino v. New York City Dep't of Educ.*,
   959 F.3d 519 (2d Cir. 2020) .................................................................................................. 2, 6

*Zvi D. by Shirley D. v. Ambach*,
   694 F.2d 904 (2d Cir. 1982) ............................................................................................ 2, 4, 5

**Federal Statutes**

20 U.S.C. § 1415(j) ................................................................................................................ passim

**State Statutes**

N.Y. Educ. Law § 4404(a) (McKinney) ......................................................................................... 7

**Federal Regulations**

34 C.F.R. § 300.518(a) ................................................................................................................... 7

**PRELIMINARY STATEMENT**

Plaintiffs submit this Reply Memorandum of Law in support of their motion for an injunction under the stay-put provision of the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1415(j). In their Opposition, Defendants argue that Plaintiffs have burdened this Court with moot and untimely requests for relief.[1] Yet Plaintiffs' claims are neither moot nor unripe, and court intervention is necessary. The N.Y.C. Department of Education ("DOE") repeatedly withholds payment under IDEA until a lawsuit is commenced—then cries foul.

IDEA is a cooperative statute that ensures children with disabilities receive a free appropriate public education ("FAPE") through Individualized Education Programs ("IEPs") and procedural safeguards. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 196 (2d Cir. 2002). Cooperation is the touchstone of IDEA, court intervention is often necessary for DOE to meet its obligations.

**ARGUMENT**

Typically, a Plaintiff must prove the following to obtain a preliminary injunction: (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of their claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest. *Ali v. Wuchte*, No. 22CV01532HGLGD, 2022 WL 3682303, at *1 (E.D.N.Y. Aug. 25, 2022). "Irreparable harm is an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020). But traditional preliminary injunction standards do not apply to injunctions to enforce IDEA's stay-put/pendency

---

[1] Plaintiffs' requests were neither moot nor untimely when made.

1

provision--§ 1415(j). *Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 Supp. 197, 202 (S.D.N.Y. 1988). The stay-put provision is an operative mechanism, which "is, in effect, an automatic preliminary injunction." *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). The provision "seeks to maintain the educational status quo while the parties' dispute is being resolved." *Mendez v. Banks*, 65 F.4th 56, 62 (2d Cir. 2023); *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014).[2] Here, Plaintiffs need not prove the traditional elements of a preliminary injunction—but assert they have.

I. **THE PLAINTIFFS MEET THE REQUIREMENTS FOR AN AUTOMATIC/PRELIMINARY INJUNCTION UNDER IDEA**

   A. *The Plaintiffs Can Show a Likelihood of Success on the Merits.*

Plaintiffs here can show a likelihood of success on the merits. A critical point of contention is Defendants' failure to fully comply with the Students' underlying pendency orders/agreements, which is evident in the outstanding transportation payments for C.B., L.S., S.J.D., and R.P.[3] For L.S., Defendants contend that "payment for transportation services is subject to receiving actual documentation that the student attended iBRAIN in person and/or that the student was transported to and from school." [ECF No. 21-1, ¶ 15]. However, the Findings of Fact and Decision ("FOFD") for the 2023-2024 school year does not require the production of any added documentation—it states in pertinent part, "(2) Parent's claim for transportation services for Student's unilateral placement, as well as direct funding to the Transportation Provider is GRANTED for the 2023-2024 school year as follows: (a) The District shall directly fund Student's transportation services

---

[2] *See also Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020) ("We have interpreted this provision to require a school district to continue funding whatever educational placement was last agreed-upon for the child until the relevant administrative and judicial proceedings are complete." (Internal quotation marks and citation omitted)).

[3] DOE has now made the first two tuition-payment installments for Student-Plaintiff R.P. pursuant to the Student's tuition agreement. The third installment under the Student's tuition agreement was due January 1, 2024.

between Private School and home in an amount not to exceed $192,930.00 for the 2023-2024 school year; a. The DOE shall have 35 days to make a payment." [ECF No. 1-3, p. 12].

For S.J.D., Defendants assert that "payment for transportation services is subject to receiving actual documentation that the student attended iBRAIN in person and/or that the student was transported to and from school." [ECF No. 20-1, ¶ 10]. Yet the corresponding FOFD in IHO Case No. 251257 does not authorize Defendants to demand, or Plaintiffs to provide, additional documentation. The FOFD states, "…the DOE shall fund door-to-door special education transportation services to and from Private School of the parents choosing for the 2023-2024 school year, totaling $111,180.00; and it is further."[4] No court has yet affirmed Defendants' arguments set forth above. But in *Abrams v. New York City Dep't of Educ.*, No. 20-CV-5085 (JPO), 2022 WL 523455, at *5 (S.D.N.Y. February 22, 2022), Judge Oetken affirmed that the terms of Plaintiffs' transportation contracts required the parents to fulfill payment obligations irrespective of service usage—and DOE's obligations were the same.

Defendants' claim for additional documentation for transportation payments is not supported by the pendency orders or legal precedent. The Students' pendency orders require funding but do not require additional documentation.

### B. *The Plaintiffs Can Show a Likelihood of Irreparable Harm.*

Defendants' contention that the Plaintiffs have not shown actual or imminent harm fails to acknowledge the wider educational and developmental repercussions of the placement/program's financial instability, and the Students' inability to attend their pendency program. A stable educational environment is especially critical for students with special needs. When this action

---

[4] At the time of the complaint's filing in this matter, the FOFD under IHO Case No. 251257 had not yet become final due to the ongoing appeal period. As of the current date, the appeal timeline for the FOFD for S.J.D. has expired. This FOFD was issued by Impartial Hearing Officer ("IHO") Michael Das on November 17, 2023.

was filed, Mr. Mielnik highlighted that the pendency placement's financial challenges, stemming from delayed pendency payments, could lead to a reduction or cessation of educational service, which would directly and adversely impacting the students' education [ECF No. 10-1]. Plaintiffs may seek an automatic injunction under IDEA's stay-put provision if they show DOE's delay or failure to make pendency payments has jeopardized their children's pendency educational placements. *Mendez*, 65 F.4th at 64. Plaintiffs here have shown that the DOE's delay in making the Students' pendency payments has jeopardized those placements. Losing their current educational placements will cause irreparable harm to the Students here—all with traumatic brain injuries resulting in severe disabilities.

Alternatively, Plaintiffs need not show a likelihood of irreperable harm.

As discussed below, irreparable harm is not a prerequisite for an injunction under the IDEA's stay-put provision—20 U.S.C. § 1415(j). In *Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 202 (S.D.N.Y. 1988), the Court clarified that the traditional preliminary injunction standards do not apply to enforcement of pendency under the IDEA.[5] The stay-put provision "is, in effect, an automatic preliminary injunction," and IDEA "substitutes an ***absolute rule in favor of the status quo*** for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fairground for litigation and a balance of hardships." *Zvi D. by Shirley D.*, 694 F.2d at 906, (emphasis added).

The Second Circuit has further characterized § 1415(j) as an essential protective measure for students. Not only does it safeguard students, but it also "substitutes an absolute rule in favor of the status quo"—that is, the maintenance of a student's then-current educational placement—for the standard preliminary injunction analysis involving irreparable harm, the likelihood of success

---

[5] Citing *Cochran v. D.C.*, 660 F. Supp. 314, 319 (D.D.C. 1987).

on the merits, and the balance of hardships. *Mendez*, 65 F.4th at 62. *Zvi D. by Shirley D.*, 694 F.2d at 906. Plaintiffs' rights in this context are unambiguous—they have a right to redress if they can establish that a delay or failure in payment is jeopardizing their child's educational placement, a principle grounded in *Mendez*, 65 F.4th at 63. DOE's delayed pendency payments have caused an imminent risk to the Students' educational placements, further denying the Students a FAPE. *Mendez*, 65 F.4th at 64.

Additionally, Defendants' references to the Brain Injury Rights Group ("BIRG") and *Neske v. N.Y.C. Dep't of Educ.*, No. 22-2962-cv, 2023 U.S. App. LEXIS 34126, at *6 (2d Cir. December 26, 2023) are of no merit—they are not pertinent to the current proceedings. [ECF No. 20, p. 16-17]. These assertions are no more than a distraction—an attempt to divert the Court's attention from the issues here. The emphasis placed by Defendants on the financial situation of iBRAIN and the alleged broader campaign mentioned in *Neske* is a red herring—it is an attempt to discredit Plaintiffs' law firm and its founder, hoping to absolve DOE from its misdeeds. Moreover, Defendants' suggestion that iBRAIN's financial condition should not grant Plaintiffs greater priority in receiving their pendency funding sidesteps the core issue here. Plaintiffs are not seeking preferential treatment but are advocating for the enforcement of the rights they already have under IDEA—rights they under the statute and have otherwise gained by prevailing in their IDEA proceedings.

### C.  *The Public Interest is Served by the Issuance of an Injunction.*

Granting an injunction here aligns with the public interest by ensuring that DOE adheres to laws and regulations designed to protect students with disabilities. Upholding these laws and regulations, which safeguard students' rights and well-being, is undoubtedly in the public interest. While acknowledging Defendants' emphasis on protecting public funds and maintaining budgetary

oversight[6] is critical, this rationale has often been overused to justify DOE's arbitrary and capricious system of paying and/or reimbursing the families that it has failed. The funds DOE so cautiously protects belong to the disabled students in their district—they are earmarked for the Students, not DOE. The primary concern here is DOE's obligation to provide continuous and adequate educational services to students with disabilities.

Defendants assert that immediate payment to iBRAIN would disrupt basic budgetary oversight measures and potentially frustrate fiscal policies. [ECF No. 20, p. 19]. But it is essential to recognize that DOE's persistent delays in payments have led to aggrieved students and parents, incurred late fees and interest, and prompted unnecessary litigation, thus straining court and legal resources. By ensuring timely payments, an injunction would compel DOE to rectify its flawed system, benefiting other students in need of timely financial support in the future. Plaintiffs are not requesting an order that would frustrate fiscal policies, only one that would create the semblance of a process. Plaintiffs are confident the Court could fashion an appropriate that would benefit all parties here and prejudice none.

### D.    *The Balance of Hardships Favor the Plaintiffs.*

The balance of hardships favors Plaintiffs because non-compliance with IDEA's pendency provision and the Students' pendency orders has imposed substantial legal, financial, and emotional burdens on the Plaintiffs. Plaintiffs' hardships extend beyond immediate financial considerations, encompassing the ongoing educational disruption and emotional strain caused by the DOE's consistent non-compliance. Defendants' emphasis on the timing of financial payments fails to recognize the essence of the issue—DOE's overall failure to consistently meet its legal

---

[6] *Mendez*, 65 F.4th at 63; *Ventura de Paulino*, 959 F.3d 519.

obligations causes real distress and harm to the Plaintiffs and similarly situated families in DOE's district.

## II. PENDENCY ACTS AS AN AUTOMATIC INJUNCTION REQUIRING DEFENDANTS TO FUND PLAINTIFFS' EDUCATIONAL PLACEMENTS DURING PENDENCY OF THE DUE PROCESS PROCEEDINGS

The IDEA's "stay-put" provision under § 1415(j) provides, *inter alia*, that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local education agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child." *See also* 34 C.F.R. § 300.518(a); N.Y. Educ. Law § 4404(a) (McKinney). Implicit in maintaining the status quo is the requirement that a school district continues to finance an educational placement that was in place when the parents requested a due process hearing. To cut off public funds would effectively amount to a unilateral change in a student's placement (or educational program), which IDEA prohibits. *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004).

Case law in this Circuit prohibits Defendants from withholding pendency-related funds where the pendency placement is uncontested. *See T.M. ex rel. A.M.*, 752 F.3d at 152 (holding that the pendency provision "[r]equires that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing."); *see also Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 314 (S.D.N.Y. 2005). Placement necessarily includes funding, particularly where pendency lies in a private school or private placement—without funding, there is no placement. Funding goes hand-in-hand with placement. The facts here underscore this concept.

In *M.R.*, 744 F.3d at 123, the Third Circuit relied on Second Circuit precedent, specifically *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476 (2d Cir. 2002), and *Mackey ex rel. Thomas M.*, 386 F.3d at 163, to reach the same conclusion. In *M.R.*, the Third Circuit held: "[W]e have expressly held that financing goes hand-in-hand with pendent private school placement:

> It is undisputed that once there is a state agreement with respect to pendent placement, *a fortiori*, financial responsibility on the part of the local school district follows. Thus, from the point of the state administrative decision forward… the Student's pendent placement, by agreement of the state, is the private school, and the school district is obligated to pay for that placement. *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 84 (3d Cir. 1996).

*M.R.*, 744 F.3d at 123 (internal citations omitted).

While the Second Circuit in *Mendez* found that "nothing in the text" of § 1415(j) compels DOE to immediately fund educational placements, IDEA aims to prioritize the child's well-being and continuous educational advancement. 65 F.4th 56. Any delay in funding ignores the purpose of IDEA. While § 1415(j) does not mandate "automatic fast-track" funding, it emphasizes that a child's then-current educational placement when a Due Process Complaint ("DPC") is filed is to be maintained throughout all administrative and judicial proceedings regarding the DPC. This emphasis acknowledges the significance of consistent, uninterrupted education, which is intrinsically tied to timely funding. The Second Circuit has left the door open for students like the Student-Plaintiffs here to seek an injunction directing payment or reimbursement **if they show that a delay or failure to pay the pendency placement/program has jeopardized their educational placement.** *Mendez*, 65 F.4th at 63.

While the IDEA's stay-put provision might not expressly provide a timeline for funding, its overarching intent is clear—ensuring the uninterrupted education of the child. The Court in *Mendez* did not foreclose the immediacy of the relief available under IDEA's stay-pur provision—it only clarified when such relief is appropriate. Plaintiffs seek enforcement because DOE's

administrative processes have put these students' placements at risk.[7] Each Student-Plaintiff here is entitled to an injunction requiring DOE to *fast-track* funding for their pendency placements/programs—to accelerate payment and/or reimbursement—without regard to the traditional preliminary injunction factors. *See Mendez*, 65 F.4th at 63. Each Student's pendency placement determination, which has been settled and remains unchallenged, should be respected and upheld. **Parents seeking educational payments may have a right to automatic injunctive relief** if they can show **that a district's delay or failure to pay has threatened their child's placement.** *Id.*[8] Here, DOE's delay and/or failure to pay the Student's tuition and related services as pendency **has threatened each Student's placement.**

In *Mendez,* the Plaintiffs argued that (1) § 1415(j) functions as an "automatic injunction," with no requirement to show irreparable harm to maintain an educational placement, and (2) "funding goes hand-in-hand with placement." *Mendez*, 65 F.4th at 62. The Second Circuit held that propositions (1) and (2) are both accurate and that the DOE must fund a student's educational placements throughout their Due Process Proceeding. *Id.* The Court noted that while § 1415(j) functions as an "automatic injunction" with no requirement to show irreparable harm to maintain a student's educational placement and that while funding goes hand-in-hand with a private

---

[7] In *Mendez*, the Second Circuit clarified that parents or guardians are entitled to obtain automatic, injunctive relief under § 1415(j), directing DOE to immediately pay or reimburse their child's educational expenses at their pendency placement/program if they establish that DOE's delay or failure to fund such pendency placement/program has jeopardized their child's educational placement. *Mendez*, 65 F.4th at 63. In such circumstances, § 1415(j) may require DOE to automatically *fast-track* pendency funding for the child's educational placement/program—to ensure the child's placement/program is not jeopardized. *Id.*

[8] Nothing in *Mendez* suggests that the Second Circuit gave new meaning to § 1415(j) or changed long-standing, well-established precedent. Rather, the Circuit recognized the realities of private educational placements, public funding, and bureaucracy. The Second Circuit did not abandon its long-standing view that § 1415(j) functions as an "automatic injunction" without regard to the traditional injunction factors, such as irreparable harm and likelihood of success on the merits. *See, Neske v. New York City Dep't of Educ.*, No. 19-CV-2933 (VEC), 2019 WL 3531959, at *2 (S.D.N.Y. Aug. 2, 2019). *Mendez* added a condition precedent to receiving an automatic injunction under § 1415(j), for immediate pendency funding—the district's delay or failure to pay pendency funding has jeopardized or placed the student's program at risk. Such a showing may entitle a plaintiff to relief under § 1415(j) without regard to the traditional injunction factors, such as irreparable harm and likelihood of success on the merits.

educational placement, § 1415(j) does not require DOE to automatically *fast-track* funding for the educational placement. *Mendez*, 65 F.4th at 63. The Court curiously observed that "Instead of arguing that their children's pendency placements are at risk, the Plaintiffs allege that they and their children have suffered irreparable harm in the form of a violation of the procedural rights afforded to them under the stay-put provision." *Mendez*, 65 F.4th at 64. But the children's pendency placements in *Mendez* were not imminently at risk—so the *Mendez* Plaintiffs could not argue that they were. Such is not the case here. Here, the Students' placements are very much at risk. DOE's delay and/or failure to fund the Students' pendency placement/program has crippled iBRAIN. If pendency payments are not made, the Students may be left without a program to meet their educational.

Finally, even when the courts have applied the traditional preliminary injunction standards in IDEA matters concerning failure to remit pendency payments in a timely manner, they have granted the plaintiffs injunctive relief, finding that nonpayment satisfies the traditional standards. In *Petties v. D.C.*, 881 F. Supp. 63 (D.D.C. 1995), the Court found that Defendants' failure to remit pendency payments created irreparable harm. In *Petties*, students and their parents brought a class action against the District of Columbia and moved for a preliminary injunction to remedy late payments under the IDEA. 881 F. Supp. at 64. The Court applied the traditional preliminary injunction standards and granted Plaintiffs the injunctive relief they sought because private schools and service providers stated that the school district's untimely payments would force them "to discontinue existing placements, to refuse to accept further placements of… students for the current and [subsequent] school years or to discontinue providing services to them." *Petties*, 881 F. Supp. at 66. This is precisely the situation here. DOE's untimely payment practices will force the Students' existing placement to close and discontinue providing services to them. The D.C.

school district's delayed payments risked denying students a FAPE, similar to the risk caused by DOE's delayed payments here.

## CONCLUSION

For the reasons stated above, Plaintiffs request that the Court award the injunctive relief sought and issue an order directing the Defendants to pay all outstanding balances related to the Student-Plaintiffs' pendency placements/programs at iBRAIN, including tuition, special transportation, and nursing, and further order Defendants to continue funding each Student-Plaintiff's pendency placement/program at iBRAIN, including each Student's tuition and related services, special transportation and nursing throughout the administrative and judicial proceedings relative to each Student's DPC for the 2023–2024 extended school year. Plaintiffs request such other, further, and different relief as the Court deems just, proper, and equitable.

Dated:   January 4, 2024
         New York, New York

                                                Respectfully submitted,
                                                Brain Injury Rights Group, Ltd.
                                                *Attorneys for Plaintiffs*

By:   */S/*
      Rory J. Bellantoni, Esq. (RB2901)
      300 East 95th Street, #130
      New York, New York 10128
      rory@pabilaw.org